In the Matter of the Application of NEW YORK STATE GAS AND ELECTRIC CORPORATION for a Certiorari Order against JOHN F. GILCHRIST and Others, as and Constituting the State Tax Commission.

Third Department, June 27, 1924.

**Taxation — mortgage tax — bonds of corporation were issued to replace bonds issued under same mortgage — original bonds were surrendered and canceled — mortgage authorized issuance of refunding or replacing bonds — substituted bonds matured at later date and carried different rate of interest — mortgage tax cannot be imposed on amount of substituted bonds under Tax Law, §§ 253, 255 and 259.**

A mortgage tax cannot legally be imposed under sections 253, 255 and 259 of the Tax Law upon bonds of a corporation issued to replace bonds theretofore issued under the same mortgage, though the new bonds mature at a later date and carry a different rate of interest, where the mortgage authorizes the issuance of refunding or replacing bonds and the substituted bonds so issued are not sold but are delivered to the original bondholders in exchange for the original bonds which are surrendered and canceled.

CERTIORARI order granted out of the Supreme Court at the Albany Special Term and entered in the office of the clerk of the county of Albany on the 13th day of October, 1923, directed to John F. Gilchrist and others, as and constituting the State Tax Commission, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in refusing to refund certain mortgage taxes alleged to have been erroneously collected from the petitioner.

**772** MATTER OF NEW YORK STATE GAS & EL. CORP. *v.* GILCHRIST.

Third Department, June, 1924. [Vol. 209

*Frank Irvine* and *Garrett A. Brownback,* for the relator.

*Carl Sherman,* Attorney-General [*Harry P. Kehoe,* Deputy Attorney-General, of counsel], for the respondents.

H. T. KELLOGG, J.:

The relator executed and delivered to the Equitable Trust Company of New York a mortgage upon certain real estate. The mortgage was dated July 1, 1921, and was recorded in the several counties where the real estate was situate prior to July, 1922. It was given to secure bonds to be issued to an amount not limited to be determined by the relator. Bonds totaling $1,295,111, designated " first series," dated July 1, 1921, to mature July 1, 1947, and to bear interest at five per cent, were duly issued. Bonds totaling $1,719,000, designated " second series," dated July 1, 1921, to mature July 1, 1952, and to bear interest at six per cent, were also duly issued. These bonds were purchased by the Associated Gas and Electric Company and the mortgage recording tax was duly paid thereon. The parties interested were subsequently advised that bonds maturing at a more remote date would command a better price in the market. Consequently, in October, 1922, the Associated Gas and Electric Company, which then owned all the bonds, and the relator, which had issued the bonds and executed the mortgage, entered into an agreement for the replacement of the old issues with a new issue. It was agreed that bonds designated " third series " to mature October 1, 1962, and to bear interest at five and one-half per cent, should be issued. Bonds of the " third series," totaling $2,045,000, were in fact issued. Exchanges of new bonds for old were thereupon made whereby all bonds of the " first series," totaling $1,295,000, were canceled as well as bonds of the " second series " to the extent of $740,000. The transaction was entirely consistent with the terms of the mortgage, which, while they did not require, nevertheless fully sanctioned the issuance of bonds " for the purpose of refunding or replacing " bonds previously issued when such bonds should " be cancelled, paid, redeemed or deposited." The question in the case is whether or not a mortgage recording tax of $10,225, which, on account of the new bond issue, was exacted and paid under protest, was legally imposable.

" A tax of fifty cents for each one hundred dollars and each remaining major fraction thereof of principal debt or obligation which is, or under any contingency may be secured at the date of the execution thereof or at any time thereafter by a mortgage on real property   *   *   *   is hereby imposed on each such mortgage, and shall be collected and paid as provided in this article." (Tax Law,

§ 253, as amd. by Laws of 1916, chap. 323.)  It is provided in section 255 of the Tax Law (as amd. by Laws of 1916, chap. 323) that if a supplemental mortgage is recorded " for the purpose of correcting or perfecting any recorded mortgage, or pursuant to some provision or covenant therein, or an additional mortgage is recorded imposing the lien thereof upon property not originally covered " to secure the principal debt of the primary mortgage, the mortgage thus given shall not be subject to taxation.

In *People ex rel. Home Mortgage Investment Co.* v. *Tax Commissioners* (182 App. Div. 700) thirty-three $1,000 bonds secured by a mortgage were given by a borrower to a lender to take up a former bond for $33,000 and a mortgage securing it given by the former to the latter.  The terms of payment in the new bond were precisely the same as in the old bond.  The court held that a tax was not payable upon the recording of the second mortgage.  It reasoned that the tax was upon the debt; that there was a new mortgage but no new debt.  It said:  " Hence, to exact a second tax is to lay a second impost upon the self-same debt because of a variation in the form of the obligation and the security for the debt."  In *People ex rel. United States Title G. Co.* v. *Tax Commission* (230 N. Y. 102) a new bond together with a new mortgage was given by a borrower to a lender, covering a new loan as well as the amount of an old loan, which had been evidenced by a bond secured by a mortgage upon which a recording tax had been paid.  The new bond provided for a later day of payment than did the old.  The court held that a recording tax was payable upon the new mortgage which was measurable by the entire principal sum secured thereby. It might be thought, in view of the reasoning in the *Home Mortgage* case that the tax was upon the debt rather than upon the mortgage, that this case was an authority for the proposition that a bond in part given to replace a prior bond, although providing different terms of payment for the principal sum of the prior loan, nevertheless, even as to that part, created a new debt which was again taxable.  The court, however, did not follow the reasoning in the *Home Mortgage* case.  It held that the tax is not upon the debt but upon the mortgage; that the debt merely measures the tax; that when there is a second mortgage there must be a second tax unless the mortgage is of the excepted class of supplemental mortgages; that the mortgage under consideration was not of that class.  Judge CARDOZO said: " The recording tax is due upon this mortgage as upon others unless the transaction is within some exception established by a later section."  The decision in the *Home Mortgage* case was approved, but solely on the ground that, owing to certain terms in the first mortgage, the second mortgage was in the excepted class

**774** MATTER OF NEW YORK STATE GAS & EL. CORP. *v.* GILCHRIST.

Third Department, June, 1924. [Vol. 209

of supplemental mortgages. These cases, therefore, since they deal solely with the question whether or not a second mortgage is supplemental, afford no assistance upon this issue, for here there was no second mortgage.

Section 259 of the Tax Law (as amd. by Laws of 1917, chap. 573) deals particularly with " trust mortgages." It provides that, if the sum of the principal indebtedness of such a mortgage has not been fully advanced when the mortgage is recorded, the tax shall be measured by the advances which have then actually been made. It provides further: " Whenever a further amount is to be advanced under the original mortgage, or shall accrue thereon or become secured thereby, the corporation making such mortgage shall pay the tax on such amount." In *People* v. *Boston & Maine Railroad* (202 App. Div. 54) bonds were issued under the terms of a trust mortgage for the purpose of retiring matured bonds secured by the same mortgage. The bonds were sold and with their proceeds the old bonds were paid. It was held that the new bonds represented " a further amount " " advanced under the original mortgage; " that a recording tax measured by the principal sum of the new bonds was payable. This court said: " They [the original bond-holders] were entitled to have their bonds paid. The transaction was in no sense an exchange of bonds. The new bonds were placed on the market and the proceeds thereof used to pay and discharge the old bonds. The indebtedness, therefore, was not the same. The transaction consisted of the substitution of one ' principal indebtedness ' in place of another."

The present case differs from the *Boston & Maine* case in that the new bonds were delivered directly into the hands of the old bondholders who thereupon canceled prior bonds to the extent of an aggregate principal sum equaling that of the new bonds. The new bonds were issued for the purpose, not of sale, but of direct substitution. The mortgagor, by an agreement made in advance of the issue, was obliged to give new bonds for old, while the mortgagee was obliged to make the exchange. It is true that by the new bonds the mortgagor promised to pay in 1962 what it had previously agreed to pay in 1947 and 1952. It is also true that it promised to pay interest at five and one-half per cent whereas it had previously agreed to pay interest at five and six per cent. Was there an additional " principal debt or obligation " to measure an additional tax upon the identical mortgage? A debt is not merely a promise to pay money. It involves the relationship of debtor and creditor, of borrower and lender, and ordinarily signifies an exchange of cash for a promise to return it with an increment of interest. There was here the creation of no new

relationship; there was no new creditor, no new debtor, no new loan. It must be remembered that it is the principal sum of a loan, not the interest to be paid thereupon, which measures a mortgage tax. Here there was no new principal sum although there was a new interest rate and a new date of payment. "Whenever a further amount is to be advanced under the original mortgage," a tax, measured by the advance, must be paid. No "further amount" was advanced under this mortgage. In this respect the case is essentially different from the *Boston & Maine* case. In my judgment the tax which has been paid was not legally imposed.

The determination should be annulled, with fifty dollars costs and disbursements, and the moneys paid under protest are directed to be returned to the relator.

All concur.

Determination annulled, with fifty dollars costs and disbursements, and the moneys paid under protest are directed to be returned to the relator.