THE PEOPLE OF THE STATE OF NEW YORK ex rel. BOSTON AND MAINE RAILROAD, Relator, *v.* MICHAEL F. LOUGHMAN and Others, as and Constituting the STATE TAX COMMISSION, Respondents.

Third Department, November 27, 1929.

*Whalen, Murphy, McNamee & Creble* [*Robert E. Whalen* of counsel], for the relator.

*Dudley, Stowe & Sawyer* [*Ansley W. Sawyer* and *Walter C. Lindsay* of counsel], for Terminals and Transportation Corporation of America.

*Hamilton Ward, Attorney-General* [*Henry S. Manley, Assistant Attorney-General,* of counsel], for the respondents.

HASBROUCK, J. The question presented for review is whether or not the case is governed by the decision in *People* v. *Boston & Maine Railroad* (202 App. Div. 54) or by *Matter of New York State Gas & Electric Corporation* v. *Gilchrist* (209 id. 771).

After quoting the statute, COCHRANE, P. J., said in *Peop e* v. *Boston & Maine Railroad:* " There is no provision in the mortgage or otherwise requiring the original bondholders to accept new bonds in place of those matured. They were entitled to have their bonds paid. The transaction was in no sense an exchange of bonds. The new bonds were placed on the market and the proceeds thereof used to pay and discharge the old bonds. The indebtedness, therefore, was not the same. The transaction consisted of the substitution of one ' principal indebtedness ' in place of another. The defendant would read the statute as if it applied to an indebtedness which might be secured by the mortgage at any one time. The statute by its phraseology gives no intimation of such a purpose. \* \* \* An old debt or obligation existed in respect to which the tax was formerly paid. A new debt or obligation has now come into existence which is equally subject to taxation. \* \* .\* In any event it is a new debt or obligation which the mortgage secures. The old debt has been destroyed. A new one has been created."

In *Matter of New York State Gas & Electric Corporation* v. *Gilchrist,* Mr. Justice KELLOGG, writing for the Appellate Division, said: " The present case differs from the *Boston & Maine* case in that the new bonds were delivered directly into the hands of the old bondholders who thereupon canceled prior bonds to the extent of an aggregate principal sum equaling that of the new bonds. The new bonds were issued for the purpose, not of sale, but of direct substitution. The mortgagor, by an agreement made in advance of the issue, was obliged to give new bonds for old, while the mortgagee was obliged to make the exchange. \* \* \* There was here the creation of no new relationship; there was no new creditor, no new debtor, no new loan. It must be remembered that it is the principal sum of a loan, not the interest to be paid thereupon, which measures a mortgage tax. Here there was no new principal sum. \* \* \* No ' further amount ' was advanced under this mortgage. In this respect the case is essentially different from the *Boston & Maine* case."

It is apparent from reading these excerpts from these two cases that the fact which controlled the later decision was whether or not the debt remained the same.

It appears in *People* v. *Boston & Maine Railroad (supra)* that the trust mortgage was executed December 1, 1919, and was given to secure bonds in the aggregate principal amount of over $95,000,000. When the mortgage was recorded the recording tax on that amount was paid.

The $95,000,000 of bonds paid included the $40,490,000, measured

by which the State department has now imposed a mortgage recording tax of $12,512.96.

Under the trust mortgage there is a provision for the exchange of bonds providing that the bonds issued shall be designated by a distinctive letter or otherwise. (Exhibit 3, § 6.)

The plan and agreement provides that the $43,522,000 falling due 1925 to 1932, inclusive, will be extended or refunded. (Art. 4.)

The scheme of the trust mortgage, the plan and reorganization agreement, the resolution of the board of directors, the notice to bondholders, the assent of the bondholders, and the order of the Massachusetts Department of Public Utilities all comprehend that the bonds of the underlying corporation made by agreement of the bondholders the obligation of the consolidation corporation, the new corporation, contemplate an exchange of bonds.

The fact is established that prior to the issue of $40,490,000 bonds the depositing bondholders secured by the trust mortgage agreed to exchange their bonds for certain new series of the bonds of the consolidated company.

" The new bonds were delivered directly into the hands of the old bondholders   *   *   *   to the extent of an aggregate principal sum equaling that of the new bonds.   The new bonds were issued for the purpose, not of sale," but of exchange. (*Matter of New York State Gas & Electric Corporation* v. *Gilchrist, supra.*)

There was, so far as this $40,490,000 bonds are concerned, a direct substitution.

It seems to me that the case falls within *New York State Gas & Electric Corporation* v. *Gilchrist* (*supra*). The cited case has been quoted with approval in *People ex rel. Banner Land Co.* v. *State Tax Commission* (244 N. Y. 159, 164).

It is argued that the series of bonds issued under the trust mortgage to take up the underlying bonds constitute a new bond because there is a provision in the reorganization agreement providing for the conversion of trust mortgage bonds into preferred stock. It is apparent that if the old bonds had been refunded or exchanged for preferred stock there would have been no tax on the issue of preferred stock, or, if the bonds had been assigned, the assignment to a new ownership would not have been followed by an additional tax.

It is the mortgage that is taxed and a new debt that comes under the mortgage and increases the amount of the mortgage that provides the measure of the tax. (Tax Law, § 253, as amd. by Laws of 1916, chap. 323.) Here the mortgage is not increased or affected by the conversion feature. (*People ex rel. Banner Land Co.* v. *State Tax Commission, supra.*)

Further it is provided in the notice to bondholders under the plan and agreement: " It is not proposed that the agreement to convert into stock shall be in the form of a collateral agreement referred to by a notation on the back of the bonds, but not forming a part of the bonds themselves and not secured by the mortgage, and providing, first, that the Railroad will convert the bonds into stock as provided in the Plan and Agreement if it is legally able to do so by the direct issue of new shares to the bondholders."

Therefore, the existence of the conversion feature not made part of the bond, is not a matter which enters into decision of the case.

It follows that in the issue of the $40,490,000 bonds there is no advance under the mortgage such as the tax statute contemplates. There is no new debt. The debt secured by the issue of the series of the bonds described is the same debt. There is the same debtor by virtue of the agreement dated November 26, 1918, for consolidation. The consolidated corporation assumed all of the outstanding obligations of the seven constituent railroad corporations. The consolidated corporation being a debtor to the underlying bondholders at the time of the payment of the tax on the $95,000,000 of bonds has not changed its position as debtor for the debt is the same as that it assumed to pay.

The fact that Mr. Justice KELLOGG laid stress upon in *Matter of New York State Gas & Electric Corporation* v. *Gilchrist* (209 App. Div. 771) was that there had been an exchange or substitution of bonds contemplating no new debt.

The reliance of COCHRANE, P. J., in the *Boston & Maine Case* (*supra*) was based upon the proposition that the bonds issued by the consolidated company constituted new debt because the prior debt had been absolutely paid and satisfied.

The relator has established the fact by the record that the old debt has not been paid but that there was an exchange or substitution of securities made in accordance with an agreement between the bondholders and the consolidated company. The fact that some of the underlying bonds were due at the time of the exchange did not deprive the owners of the power to agree to extend the time of the payment of the debt such due bonds represented or to replace them or exchange them — one evidence of debt for another evidence of the same debt. The debt remaining unpaid did not become a new debt by the acceptance of new evidence of it.

What the State Tax Commission is required to do is to collect the recording tax on mortgages. It has already collected such tax on the mortgage in question. The tax collected was measured by the bonded debt secured by it at the time of its filing, December 1, 1919. The bonds of the several consolidated companies which

became by the agreement of the consolidated companies the debt of that corporation have been exchanged without increase or diminution of said amount. There was no further amount advanced under the mortgage. (*People ex rel. Banner Land Co.* v. *State Tax Commission, supra,* 164, 165.)

The tax imposed by the Commission is a second tax measured by the same indebtedness. Double taxation is a burden upon the citizen unfavored in the law. (*People ex rel. Banner Land Co.* v. *State Tax Commission, supra.*)

The determination of the State Tax Commission should be modified by reducing the amount of the tax to that imposed upon bonds CC, together with the penalty thereon as fixed by the Commission; and as so modified confirmed, with fifty dollars costs and disbursements.

HINMAN, J., concurs; VAN KIRK, P. J., also, with an opinion in which HINMAN and HASBROUCK, JJ., concur; DAVIS, J., dissents, with an opinion in which WHITMYER, J., concurs.

VAN KIRK, P. J. (concurring). The original $95,000,000 of bonds were actually certified and the tax thereon paid. Not all of these bonds were actually delivered. There were already outstanding underlying bonds secured by several mortgages executed by the corporations which later became parties to the consolidation contract and original bonds were reserved in an amount sufficient to pay these underlying bonds. The $40,490,000 of bonds which are the subject of this proceeding were authorized and certified to refund or take the place of these underlying bonds under a reorganization agreement made subsequent to the consolidated mortgage; they will likewise replace the reserved original bonds in like amount.

The recording tax is measured by the "principal debt or obligation which is, or under any contingency may be secured at the date of the execution thereof or at any time thereafter by a mortgage on real property * * *." (Tax Law, § 253, as amd. by Laws of 1916, chap. 323.) Whether or not these underlying bonds became directly, by statute (Railroad Law, § 143) or by the terms of the mortgage, a part of the principal debt or obligation secured by the mortgage, they are a part of an obligation which under some contingency might be secured by this mortgage. The consolidated bonds reserved, or new bonds, could at any time by agreement between the parties be substituted for these bonds. For this reason the amount of these bonds was included in the measure of the mortgage tax paid. It seems to me, therefore, that we cannot consider the debtor under these bonds as other than the debtor under the consolidated bonds within the meaning of this statute.

In case of trust mortgages by corporations, the recording tax may be paid measured by the principal indebtedness existing at the time of the execution and delivery of the mortgage; and " whenever a further amount is to be advanced under the original mortgage, or shall accrue thereon or become secured thereby, the corporation making such mortgage shall pay the tax on such amount." (Tax Law, § 259, as amd. by Laws of 1917, chap. 573.) The question here then is simply whether or not, by substitution of the new consolidated bonds for these underlying bonds, a further amount is advanced and has become secured by the original mortgage,

The real distinction between the old *Boston & Maine* case (202 App. Div. 54) and the *New York State Gas & Electric* case (209 id. 771) is that in the former the outstanding bonds were past due, while in the latter they were not. The statement in the opinion in the former in substance that the new bonds were sold in the open market and the outstanding bonds paid in cash was made upon a stipulation later found to be inaccurate. In fact the new bonds were directly substituted for the old. In the instant case, part of the outstanding bonds were past due and part were not due when the new bonds were substituted for the old. We are about to hold that the mortgagor and the bondholders by an agreement which is not a covenant or made in pursuance of the mortgage, but is simply a private contract to which the State was not a party, can keep an old indebtedness alive perpetually. We think we are committed to this position under the opinion in the latter case. There the time within which the old debt matured was extended materially and it was held that no further sum was advanced. It is not a distinguishing difference that in the one case the extension agreement is executed and carried out a few days before the old indebtedness matured, and in the other a few days after.

HINMAN and HASBROUCK, JJ., concur.

DAVIS, J. (dissenting). In December, 1919, seven smaller railroads were consolidated with the Boston and Maine railroad. About the same time the railroad made a trust mortgage and paid a recording tax on the amount of indebtedness then existing and secured directly or contingently, to wit, $95,601,000. It was an " open mortgage " and among other things it provided for the issuance of " additional bonds for the purpose of (a) paying, refunding or retiring bonds secured hereby where now outstanding or issued or to be issued hereunder."

The bonds were issued in series designated by the letters of the alphabet. Series A fell due on July 1, 1920. Bonds of some of the smaller railroads fell due at about the same time. New bonds

called series D were issued to refund series A. Series F and I were issued to refund the bonds of the smaller railroads. The railroad resisted the payment of a further tax. The question was determined adversely to its claim in *People* v. *Boston & Maine Railroad* (202 App. Div. 54; affd., 234 N. Y. 629).

Now other bonds have fallen due, and others will become due presently. New and further bonds aggregating $40,490,000 have been issued to refund those due and becoming due in the near future. The latter are to be delivered up and canceled. New ones are to be given to such bondholders as will accept them. Again the railroad declines to pay the recording tax claiming there has been no further amount advanced on the mortgage. The railroad relied in its position on the authority of *Matter of New York State Gas & Electric Corporation* v. *Gilchrist* (209 App. Div. 771; affd. on opinion below, 240 N. Y. 552). That case was decided in this court subsequent to the decision of *People* v. *Boston & Maine Railroad* (*supra*).

In view of the somewhat conflicting results in these two decisions, upon which the parties respectively rely, it is an arguable question whether a recording tax is now payable. As has been said, the decision in the first case cited involved the same trust mortgage that is now under consideration. The circumstances under which the bonds were there issued were very similar to those presented under these issues. I incline to the view that the former decision is controlling here.

If we disregard a somewhat inaccurate statement of fact inadvertently made in the opinion in the *Boston & Maine* case, and examine the record to learn what was actually decided, we find that there were three new issues of bonds then issued, to wit, series D, I and F. Series D bonds were issued to take up and replace an equal amount of bonds chiefly held by the Director-General of Railroads, a few being in the hands of the trustees. The new bonds were delivered to the Director-General and the old bonds were surrendered. There was no sale except as the parties treated the transaction as a sale. There was an agreement in advance that such an exchange should be made. The old bonds were retired and canceled after the exchange. Yet it was held that under the provisions of the Tax Law, sections 253 and 259, a tax was payable.

At the same time, series I and F were issued for " paying, refunding and retiring " underlying bonds of other railroads which had become consolidated with the Boston and Maine. How the underlying bonds falling due were refunded does not appear. It may have been by payment in cash or by substitution of the

new issues. At any rate it was held that a tax was payable on the amount of the new issue. There was a new debt, a new debtor, and the substitution of one principal indebtedness for another.

On that appeal the argument of the railroad, as summarized in the brief of counsel, was: "The tax having been paid upon the total amount secured by the mortgage at the time when it was recorded, a further tax accrues only if and when the aggregate amount * * * is increased." That in effect is the argument here. Certain bond issues have matured and others are presently maturing. About two-fifths of these bonds are underlying bonds of small railroads consolidated with the Boston and Maine. These bonds were issued by another obligor and subsequently were secured only collaterally or by guaranty under the terms of the trust mortgage. Now, there are new issues of convertible bonds in series, to exchange for those due or about to become due. The structure of the obligation is changed by offering a bond convertible into preferred stock. There is a new primary debtor as to two-fifths of the bonds. The old debtor is discharged and its obligation canceled. The collateral promise under the trust mortgage is gone, and is succeeded by one primary in its character. This is not refunding by direct replacement. It is paying and retiring. As to its own bonds, in its mortgage the railroad covenanted that it would "punctually pay or cause to be paid the principal and interest hereafter becoming due on every bond secured by this Indenture at the dates * * * mentioned therein." The presumption is that the debtor is keeping its promise by making payment. The trust mortgage contains no authority for such substitution without changing the character of the debt. The only substitution is that of "one 'principal indebtedness' in place of another. * * * The old debt has been destroyed. A new one has been created." (People v. Boston & Maine Railroad, supra, 55, 56.)

Matter of New York State Gas & Electric Corporation v. Gilchrist (supra) was an unusual case. A trust mortgage had been made and recorded and the tax paid. Bonds were issued but were delivered only to the parent company which owned the entire capital stock of the mortgagor. There had been no genuine sale, and no bonds had reached the hands of the public. It was desired to substitute another issue of bonds more attractive for sale in the place of the prior issues not yet disposed of by general sale. The trust mortgage permitted an issue for "refunding or replacing." The parent company and the mortgagor entered into a written agreement in advance to exchange the issues. The Public Service Commission gave permission to make the exchange. It was held that no additional tax could be imposed, for "no 'further amount' was

advanced under this mortgage." So far as it appears no amount of money had ever been advanced on the bonds. They were in effect unissued and undelivered to any *bona fide* purchaser.

If we apply the doctrine in the last cited case to the ordinary refunding operation, there is no practical reason why anything but the initial recording tax should ever be paid. All that is necessary to refund a debt falling due is to gather the bonds into the hands of a few banks or brokers and " exchange " a new issue for the old one. This would meet the legal requirements of a " substitution " or " exchange " and would not constitute a new debt, and the payment of a tax would be evaded. There would never be a further amount advanced under the original mortgage. It is a modern example of the ancient barter of " New lamps for old ones."

Because I believe the doctrine unsound, resulting in a violation of the spirit and purposes of the statute, and because I believe the transaction in legal effect was a sale, with a further amount advanced, I disagree with the conclusions of a majority of the court. I dissent and vote to confirm the determination.

WHITMYER, J., concurs.

Determination modified by reducing the amount of the tax to that imposed upon bonds CC, together with the penalty thereon as fixed by the Commission, and as so modified confirmed, with fifty dollars costs and disbursements to relator.