In the Matter of CITY TITLE INSURANCE COMPANY et al., Petitioners, against LEWIS ORGEL, as Register of the City of New York, Respondent.

Supreme Court, Special Term, Kings County, May 26, 1954.

*Albert Hutton* for petitioners.

*Adrian P. Burke, Corporation Counsel* (*Harry E. O'Donnell* and *Morris E. Weitzer* of counsel), for respondent.

Moss, J. This is an application under the provisions of article 78 of the Civil Practice Act by City Title Insurance Company and the Dime Savings Bank of Brooklyn, as petitioners, for an order of review against respondent, Lewis Orgel, register of the City of New York. An issue is raised as to the amount of mortgage tax due under a certain instrument entitled " Additional Advance Agreement ". Originally the City Title Insurance Company was the sole petitioner but later the court allowed the Dime Savings Bank of Brooklyn to intervene as a petitioner and an order to that effect was duly entered.

The " Additional Advance Agreement " provides for a modification of an original mortgage of record which did not contain a provision for readvances. In effect, it makes the original mortgage an " open end mortgage ". There are two types of " open end " mortgages; one directly provided for in the original mortgage itself, and the other created by a subsequent agreement between the parties. The " Additional Advance Agreement " is such a subsequent agreement and is an instrument between an owner of property and, in this case, the bank to modify a valid and existing first mortgage lien previously recorded and upon which a full mortgage tax was paid. The agreement recites the making, recording and principal sum of said mortgage as well as the reduced amount thereof. The agreement specifically states that all the terms, covenants and conditions of the said bond and mortgage, except as therein modified, shall remain in full force and effect and that the owner covenants that the said mortgage is a valid first lien on the mortgaged premises. The instrument expressly sets forth the intention of the parties to include in the original mortgage a provision for advance or readvances of the principal sum thereof as thereinafter provided in said agreement. The agreement then states that pursuant to the mortgage as modified, the mortgagee bank is readvancing the sum of $2,701.29 and bringing the amount unpaid on the mortgage up to the total principal sum of $6,000, and that said sum does not exceed the original amount of the mortgage which was $7,000. The agreement also recites that the principal sum owing on said mortgage " before the readvance " was $3,298.71.

The foregoing is better understood if the following facts are given. In December, 1944, the Dime Savings Bank of Brooklyn was the holder of a mortgage of $7,000 upon which the full mortgage tax had been paid at the time of its recording. When the principal sum was reduced to $3,298.71 the bank arranged with the mortgagor for a " readvance " of $2,701.29.

The respondent has refused to record the aforesaid agreement without the payment of a mortgage tax of $30, which was computed upon the sum of $6,000. The petitioners contended that the mortgage tax should be only $13.50 which is computed upon the readvanced sum of $2,701.29.

The other issue raised is whether the petitioners should have resorted to the State Tax Commission for a determination of the tax due before instituting this proceeding.

Considering the latter issue first, the contention of the respondent is untenable for the reason that none of the facts involved in this proceeding are in dispute and only questions of law are involved. The questions of law are (1) what section of the Tax Law applies to this instrument, and (2) what is the legal tax to be paid upon the recording of the instrument?

Respondent correctly contends that the general rule is that a petitioning party must follow the administrative procedure established under the applicable statute before seeking redress in the courts. This rule, however, is not of universal application. A mandamus order may be granted as a matter of discretion when the right to relief is clear.

The exception to the general rule was established in the case of *Kovarsky* v. *Brooklyn Union Gas Co.* (279 N. Y. 304), where a gas consumer was permitted to maintain an action to restrain the gas company from making an alleged illegal service charge claimed to be a violation of the Public Service Law, without first proceeding before the Public Service Commission, with review by certiorari. Among other things, the court said (p. 311), " Those cases, which involved an application for an order of mandamus, do not hold that certiorari is the exclusive remedy "; and (p. 312) " where only questions of law are involved direct application for relief may be made to the court ".

The *Kovarsky* case (*supra*) is of further interest in discouraging useless procedures. The court in this respect stated (p. 314) : " His legal remedy is to unite with twenty-four others similarly situated and ask the Commission to consider the question. That would seem a useless procedure, such as was condemned by Justice HOLMES in *Hollis* v. *Kutz* (*supra* [255 U. S. 452]), in view of the fact that the Commission, by its practice over a fifteen-year period of approving rate schedules including the charge in question, has clearly indicated the interpretation it places upon the statute."

In the case at issue, both the State Tax Commission and the Attorney-General of the State of New York have set forth their

interpretations of the Tax Law. (See opinion of August 17, 1953, signed Mortimer M. Kassell, deputy commissioner and counsel; and opinion of Attorney-General Nathaniel L. Goldstein, dated December 28, 1953, annexed to notice of motion.) It would be futile and unnecessary, therefore, to apply to the State Tax Commission for a determination of the specific tax due.

In *Matter of Leighton* v. *New York Tel. Co.* (184 Misc. 827, 829), the court stated: "The *Kovarsky* case (*supra*) is probably a qualification of the rule as stated in *Matter of Towers Man. Corp.* v. *Thatcher* (271 N. Y. 94, 97) that mandamus will not issue where another remedy is available or provided by law and that a petitioner should exhaust his remedy before an administrative agency having jurisdiction before resorting to a mandamus proceeding."

With respect to the amount of the tax to be paid, the instrument in question falls within the last sentence of section 250 of the Tax Law, which reads as follows: "A contract or agreement by which the indebtedness secured by any mortgage is increased or added to, shall be deemed a mortgage of real property for the purpose of this article, and shall be taxable as such *upon the amount of such increase or addition.*" (Emphasis supplied.)

The demand of the city register for a tax on the $6,000 is in effect an attempt to collect a double tax to the extent of the tax paid on the existing balance of the principal unpaid.

It is to be noted that the optional provision in the agreement to make future advances upon the principal sum of $7,000 of the primary mortgage is not at issue herein. The respondent does not contend that a tax is payable upon $3,701.29, the difference between the balance due and owing, and the sum of $7,000, the maximum amount which may be secured under any contingency in the future.

In *Matter of Park & 46th St. Corp.* v. *State Tax Comm.* (295 N. Y. 173), the court was asked to determine whether a portion of a mortgage recording tax paid under protest by the petitioner was legally exacted. In construing the third supplemental indenture, the Court of Appeals, by LEWIS, J., cited sections 250 and 253 of the Tax Law and stated as follows (pp. 177, 178): "Viewed in the light of the statutes quoted above, we think the recording of the Third Supplemental Indenture was taxable to the extent only that it made provision for an increase or addition to the principal debt or obligation owing by the mortgagor. True it is that by that instrument the date of maturity of the mortgage debt was extended, the rate of interest on bonds out-

standing was reduced and it was provided that $1,075,000 of the new 4½% bonds were to be delivered ' * * * only to the registered holder [Metropolitan] of all of the Old Serial Bonds upon surrender to the Trustee by said registered holder of all the Old Serial Bonds for cancellation.' ` But the mortgage recording tax, as we have seen, is measured under section 253 of the Tax Law by the amount of the ' principal debt or obligation ', not by the maturity date of the mortgage debt, nor by the interest rate. Both statutory enactment and judicial decisions support the mortgagor's resistance to a recording tax which, insofar as it is based upon a mortgage debt of $1,075,000, was paid when the original mortgage was recorded. Aside from alterations effected in the text of the mortgage which did not involve taxable consequences, and except for an increase of $125,000 in the amount of the mortgage debt, the execution and recording of the Third Supplemental Indenture accomplished nothing more than to modify the maturity date and the interest rate of the bonded debt and to carry out an agreement by the parties that to the extent of a portion of the mortgage debt amounting to $1,075,000 an exchange of evidences of that portion of the debt should take place. A decisive fact is that to the extent of $1,075,000, and according to the agreement of the parties, the principal of the mortgage debt remained the same. The instrument recorded increased the principal debt or obligation of the mortgagor to the extent only of the new bonded debt in the amount of $125,000. That increase was the gauge by which is measured the recording tax legally to be imposed.''

In the case at bar, it is quite evident that the parties to the mortgage sought to preserve the security of its lien to the extent unpaid on the old debt and to extend this security to any advances or readvances. Thus it is clear that the mortgage indebtedness was '' increased or added to '', within the meaning of section 250 of the Tax Law. Since the original mortgage was security only for the unpaid balance of $3,298.71 (*Champney v. Coope,* 32 N. Y. 543), the readvance provided by the '' Additional Advance Agreement '' '' shall be taxable as such upon the amount of such increase or addition '' (Tax Law, § 250). It is only to the extent of this amount that a tax need be paid. The petition is therefore granted. Settle order on notice.