In the Matter of FIFTH AVENUE & 46TH STREET CORPORATION, Petitioner, against GEORGE M. BRAGALINI et al., Constituting the State Tax Commission, Respondents.

Third Department, July 24, 1957.

*Sidney G. Kingsley* for petitioner.

*Louis J. Lefkowitz, Attorney-General (Philip J. Fitzgerald* and *John R. Davison* of counsel), for respondents.

HALPERN, J. The question presented is whether the mortgage recording tax payable by the petitioner should be computed upon a base of $3,750,000 or upon a base of $1,000,000.

The question arises out of the following transaction or series of transactions: On July 7, 1953, the petitioner had given a mortgage to the Irving Trust Company upon a leasehold estate owned by it, to secure an indebtedness in the amount of $2,150,000, evidenced by a mortgage note in that amount. On March 18, 1955, the petitioner had borrowed an additional $600,000 from the Irving Trust Company and had given it as security a mortgage upon the leasehold, which was consolidated with the earlier mortgage into a single lien securing payment of the total debt of $2,750,000. A mortgage recording tax was paid at the time of recording each of the mortgages.

On May 20, 1955, the petitioner entered into a so-called "purchase agreement" with the Massachusetts Mutual Life Insurance Company under the terms of which the insurance company agreed to purchase "$1,000,000 principal amount" of bonds to be issued by the petitioner and to be secured by an indenture of mortgage and also agreed to purchase from the Irving Trust Company the old mortgage notes in the amount of $2,750,000. The total amount of the indenture was to be $3,750,000 and it was provided that the insurance company would be entitled to receive in exchange for the mortgage notes, upon their surrender, bonds to be issued under the indenture.

The transaction was closed on May 31, 1955. The indenture of mortgage, under which the Irving Trust Company was the trustee, was executed on that day. The Massachusetts Mutual Insurance Company paid to the Irving Trust Company the sum of $2,750,000 as the purchase price of the two existing mortgage

notes and the notes were thereupon assigned by Irving Trust to the insurance company. The Irving Trust Company simultaneously assigned to itself, as trustee under the indenture, the existing mortgage in the amount of $2,750,000. The indenture provided that the lien of the existing mortgage was confirmed and consolidated with the lien of the indenture. The indenture further provided that it was to secure both the old mortgage indebtedness and any bonds issued under the indenture.

The insurance company purchased from the petitioner a bond in the principal amount of $1,000,000 under the indenture, giving the petitioner its check in that amount. The insurance company then surrendered the mortgage notes which it had acquired from the Irving Trust Company to the trustee under the indenture in exchange for a new bond issued under the indenture in the same principal amount as the aggregate amount of the old mortgage notes, namely, $2,750,000.

That was the end of the transaction so far as is here material. There was an additional step by which the insurance company surrendered the new bonds in the amounts of $1,000,000 and $2,750,000, respectively, which it had just received, and obtained for them a single bond in the amount of $3,750,000 but it is conceded that this was merely a matter of mechanics which had no effect upon the substance of the transaction.

Upon tendering the indenture of mortgage for recording on June 1, 1955, the petitioner offered to pay a tax on $1,000,000, asserting that that was the only amount by which its mortgage liability had been increased. The Register of New York City, however, insisted upon the payment of a mortgage recording tax upon the whole amount of $3,750,000. The additional tax was paid under protest and a proceeding to review the determination by the Register was brought before the State Tax Commission. After a hearing, the commission upheld the Register's determination and this article 78 proceeding followed.

The commission found, and it is its principal contention in this court, " That it was at all times intended by the parties that the indebtedness of July 7, 1953 and March 18, 1955 should be cancelled and that a new indebtedness should be substituted " in the form of a new bond " secured under a new mortgage ". We find no basis for this conclusion in the record. To support its finding, the State Tax Commission refers to the " material recitals of the purchase agreement " between the petitioner and the insurance company but the terms of the purchase agreement make it clear that the old indebtedness was

not to be cancelled but was to be acquired by purchase by the insurance company from the Irving Trust Company. The State Tax Commission also refers to the recitals in the indenture as supporting its conclusion but the provisions of the indenture also seem to us to lead to the opposite conclusion. The indenture provides " that the execution and delivery hereof shall not in any way extinguish the $2,750,000 indebtedness presently outstanding under and secured by the Existing Mortgage * * * and nothing herein contained shall impair the lien of the Existing Mortgage ". Furthermore, the indenture provided in section 3.02: " Nothing herein contained shall be construed as effecting [sic] any part of the indebtedness evidenced by such first mortgage notes and secured by the Existing Mortgage and no part of such indebtedness shall be disturbed, discharged, cancelled or impaired by the execution of this instrument or the delivery of the Bonds herein described ".

It is impliedly recognized in the form of the State Tax Commission's finding that the question of whether the old indebtedness was cancelled and a new one created is a question of the intention of the parties. The quoted provisions of the documents clearly establish that it was the intention of the parties not to cancel the old indebtedness but to continue and confirm it.

The exchange of the old mortgage notes by the holder thereof for bonds in the new form obviously did not work a cancellation of the indebtedness. This was merely an exchange of one form of evidence of the indebtedness for another form. The indebtedness remained the same; only the evidence of it was changed.

The State Tax Commission placed principal reliance upon the case of *People ex rel. Jewelers Bldg. Corp.* v. *State Tax Comm.* (214 App. Div. 99, affd. on another point 241 N. Y. 524), in which the imposition of a mortgage recording tax was upheld upon the recording of a consolidation agreement. But that was the result of the peculiar phrasing used in the instrument involved in that case. As the Court of Appeals explained, in distinguishing the *Jewelers* case in *Matter of Park & 46th St. Corp.* v. *State Tax Comm.* (295 N. Y. 173, 179): " The instrument which was recorded in that case and upon which the recording tax in suit was imposed was so phrased as expressly to extinguish the old debt ". The transaction in the *Jewelers* case was similar in objective to the transactions in the *Park & 46th St.* case and in the present case but the form was different in vital respects " which had different legal consequences " (*Matter of Park & 46th St. Corp.* v. *State Tax*

*Comm., supra,* p. 179). In matters of this kind, the form may be all-important (*Matter of Sverdlow* v. *Bates,* 283 App. Div. 487, 491).

The transaction in this case had the net result of producing a single mortgage lien in the total amount of $3,750,000 but this was accomplished by consolidating the lien of the existing mortgage in the amount of $2,750,000 with the new lien in the amount of $1,000,000 for the new loan. The State Tax Commission concedes that such a consolidation agreement would not be subject to a mortgage recording tax upon the amount of the pre-existing mortgage indebtedness but it argues that, in this case, the original indebtedness was cancelled and therefore the lien of the old mortgage was automatically extinguished and there was nothing left to consolidate with the new lien. This argument depends for its foundation upon the commission's finding that there had been a cancellation of the old indebtedness but, as we have seen, that is contrary to the evidence.

It is true, as the State Tax Commission contends, that the indenture of mortgage is not technically a supplemental mortgage within the terms of section 255 of the Tax Law but a mortgage agreement does not have to come within the technical terms of that section in order to be exempted from the tax. An agreement simply consolidating two existing mortgages does not come within the terms of section 255; yet it concededly is not subject to tax. An agreement increasing the amount of a mortgage to secure an additional loan is exempt from tax with respect to the amount of the pre-existing indebtedness under section 250 of the Tax Law. That section provides that an " agreement by which the indebtedness secured by any mortgage is increased or added to * * * shall be taxable as such upon the amount of such increase or addition ". Under the basic taxing section, section 253, as judicially construed, the tax is imposed upon an agreement modifying, extending or consolidating a mortgage or mortgages, only to the extent of any new " principal debt or obligation " secured thereby. " The mortgage recording tax * * * is measured under section 253 of the Tax Law by the amount of the ' principal debt or obligation ' " (*Matter of Park & 46th St. Corp.* v. *State Tax Comm., supra,* p. 177). These sections govern the situation here presented. The only new indebtedness was represented by the new loan of $1,000,000 made by the insurance company to the petitioner and the existing mortgage was increased only by that amount.

The case of *Matter of Park & 46th St. Corp.* v. *State Tax Comm.* (*supra*) is controlling on this aspect of the case. In that case, a third supplemental indenture was executed, under which additional bonds in the amount of $125,000 were issued and the maturity date and interest rate upon the old indebtedness were changed and provision was made for the exchange of the old bonds for new ones showing the new interest rate and new maturity date. It was held that a mortgage tax was payable only upon the amount by which the mortgage indebtedness was increased.

The transaction here involved differed from that in the *Park & 46th St.* case in two respects but, in our opinion, the differences are not of such a character as to require a different result. In the *Park & 46th St.* case, there was no change in the identity of the mortgagee. In the present case, the mortgagee under the original mortgage was the Irving Trust Company, in its individual capacity, as the beneficial owner of the mortgage. Under the new indenture, the mortgagee was the Irving Trust Company, as trustee, and the beneficial owner of the mortgage indebtedness was the Massachusetts Mutual Insurance Company. However, the old mortgage notes had been assigned to the insurance company prior to the recording of the new indenture and the original mortgage had been assigned to the Irving Trust Company, as trustee, so that, at the time of recording, the insurance company was the beneficial owner of both the original mortgage indebtedness and the mortgage lien. Concededly, the assignment of a note evidencing an indebtedness, together with the mortgage securing the note, does not give rise to any liability for a mortgage recording tax. After the insurance company had acquired the mortgage notes by purchase from the Irving Trust Company and had acquired the beneficial ownership of the mortgage lien, it was in a position to consolidate the old indebtedness with the new indebtedness owing to it for the new million dollar loan and to consolidate the lien given to secure that loan with the lien of the original mortgages. This was accomplished by the indenture. There was thus no change in the identity of the creditor by reason of the execution of the indenture; the change had occurred upon the prior assignment of the old indebtedness by the Irving Trust Company to the insurance company.

The second point of difference between this case and the *Park & 46th St.* case is that in the latter case there was no change in the form of the mortgage. It was originally a mortgage

running to the Chase National Bank, as trustee, and it remained that after the execution of the supplemental indenture. In the present case, the original mortgage was in the standard form of a direct mortgage to the Irving Trust Company as beneficial owner. As a result of the transaction of May 31, 1955, the old mortgage was transformed from a direct mortgage into a mortgage running to a trustee. In the *Park & 46th St.* case, the terms of the mortgage were changed with respect to date of maturity and the interest rate and various other textual changes were made but the basic form of the mortgage remained unchanged. Nevertheless, we believe that the new indenture in this case comes within the principle of the *Park & 46th St.* case. The essential point is that, in order to be exempt from the mortgage tax, the original indebtedness must remain undischarged and the original mortgage lien must be continued in force. In this case, both the original debt and the original mortgage lien were kept alive. The change of the form of the mortgage from a direct mortgage to a mortgage to a trustee did not impair the lien of the mortgage.

In *People ex rel. Boston & Maine R. R.* v. *Loughman* (227 App. Div. 361, affd. 254 N. Y. 513) cited with approval in the *Park & 46th St.* case, it appeared that under the new instrument, the bondholders had the right to convert their bonds into stock, a right which they did not have under the original mortgage. This was a much more substantial change than the interposition of a trustee in what had formerly been a direct mortgage. Nevertheless, it was held that no tax was payable. In *People ex rel. Banner Land Co.* v. *State Tax Comm.* (244 N. Y. 159) wholly new mortgages were given as additional security but since the principal indebtedness remained the same and the original mortgages upon the same property were not discharged, the new mortgages were held to be exempt from tax.

The parties to the transaction here in controversy undoubtedly planned its execution in such a manner as to minimize their mortgage recording tax liability. This they had the right to do. (*Bullen* v. *Wisconsin*, 240 U. S. 625, 630; *United States* v. *Isham*, 84 U. S. [17 Wall.] 496, 506.) The question presented, when their plan was challenged by the State Tax Commission, was not whether the purpose of the plan was to avoid taxes but whether the plan was a successful one and succeeded in avoiding the impact of the taxing statute.

It is undoubtedly true that, if the parties had used a different method from that adopted by them, they might have been liable for a mortgage recording tax upon the total amount

of $3,750,000. Thus, for example, if the petitioner had sold new bonds in the amount of $3,750,000 to the insurance company and had used part of the proceeds to retire the old indebtedness, a mortgage tax would have been payable upon the total amount of the new bond issue (*People* v. *Boston & Maine R. R.*, 202 App. Div. 54). If the petitioner had refinanced the old mortgage by discharging the old indebtedness and creating a new indebtedness, there would likewise have been mortgage tax liability upon the whole amount (*People ex rel. Jewelers Bldg. Corp.* v. *State Tax Comm.*, 214 App. Div. 99, affd. 241 N. Y. 524, *supra*). Even if the old indebtedness had remained undischarged but the mortgage given to secure the indebtedness had been discharged and a new mortgage had been given in its place, there would have been liability for tax upon the total amount involved (*People ex rel. United States Tit. Guar. Co.* v. *State Tax Comm.*, 230 N. Y. 102; *Matter of Sverdlow* v. *Bates*, 283 App. Div. 487, *supra*).

The parties chose a method which kept alive both the old indebtedness and the old mortgage lien, with alterations in their terms and conditions. This method was open to them under the statute and, by using it, they succeeded in keeping down their mortgage tax liability to the amount of the tax payable upon the new loan (*Matter of New York State Gas & Elec. Corp.* v. *Gilchrist*, 209 App. Div. 771, affd. on opinion below 240 N. Y. 552; *Matter of Park & 46th St. Corp.* v. *State Tax Comm.*, 295 N. Y. 173, *supra*; *People ex rel. Banner Land Co.* v. *State Tax Comm.*, 244 N. Y. 159, *supra*; *Matter of City Tit. Ins. Co.* v. *Orgel*, 205 Misc. 1076, mod. 2 A D 2d 250; 1953 Atty. Gen. 198).

The determination by the State Tax Commission should be annulled, with $50 costs, and the commission should be directed to refund the amount of the tax paid under protest.

Foster, P. J., Bergan and Gibson, JJ., concur.

Determination by the State Tax Commission annulled, with $50 costs, and the commission is directed to refund the amount of the tax paid under protest.