# D. E. FOOTE & COMPANY, INCORPORATED, *v.* STANLEY, COMPTROLLER OF THE STATE OF MARYLAND.

## ERROR TO THE COURT OF APPEALS OF THE STATE OF MARYLAND.

No. 159. Argued January 16, 1914.—Decided February 24, 1914.

The Federal Constitution prohibits a State from regulating interstate commerce; but at the same time authorizes it to burden that commerce by the collection of the expenses if absolutely necessary for enforcing its inspection laws.

There is an essential difference between policing and inspection; and a State cannot include the expense of the former as part of the expense of the latter in determining the amount which it can raise as an inspection tax which affects interstate commerce.

As inspection necessarily involves expense, it is primarily for the legislature to determine the amount; and even though the revenue be slightly in excess of the expense the courts should not interfere.

There is a presumption that the legislature will reduce inspection fees to a proper sum if the amount originally fixed proves to be unreasonably in excess of the amount required. *Red "C" Oil Co.* v. *North Carolina*, 222 U. S. 393.

Effect must be given by the courts to the provisions of the Constitution; and where it does appear that the amount of inspection fees are disproportionate to the inspection service rendered or include something beyond inspection, the tax must be declared void as obstructing the freedom of interstate commerce.

A state statute imposing an inspection tax, the proceeds of which are to be and actually are used partly for inspection and partly for other purposes such as policing state territory, is necessarily void as imposing a burden on interstate commerce in excess of the expenses absolutely necessary for inspection, and so *held* as to the Maryland Oyster Inspection Tax of 1910.

The question of constitutionality of an inspection law depends not only upon whether the excess proceeds of the tax may be used for other purposes, but whether they actually are so used; and it is the duty of the courts to determine whether the tax is excessive and the excess is

so used so as to protect citizens against payment of fees not authorized by the Constitution. *Turner* v. *Maryland*, 107 U. S. 38, distinguished, and *Brimmer* v. *Rebman*, 138 U. S. 83, followed.

While the excess of a state inspection tax may be valid as a tax on property within the State, if it does not appear that the legislature would have separately imposed such a property tax, the whole tax must be declared void if it is unconstitutional as to interstate commerce.

117 Maryland, 335, reversed.

THE plaintiffs are engaged in packing oysters taken from the waters of Maryland, Virginia and New Jersey and shipped to Baltimore where they are inspected under the provisions of the Maryland Oyster Law. This comprehensive statute contains 82 sections, one of which (§ 69) provides for the appointment of 20 special inspectors, to be paid $45 per month each, during the season. They are required to inspect all oysters in the district to which they are assigned and to give a certificate to buyer and seller in substantially the following form:

"I hereby certify that I have this day inspected for Captain ——————————— of the schooner —————— ——————, a cargo of oysters, sold to —————— —————————————, and found the same to contain ——————— bushels of merchantable oysters, and ——————— bushels of unmerchantable oysters. . . ."

The section further provides that "a charge of one cent per bushel is hereby levied to help defray the expenses of such inspection and the other expenses of the State Fishery Force, upon all oysters unloaded from vessels at the place where said oysters are to be no further shipped in bulk in vessels."

The fee was to be charged equally to the buyer and seller and in case it was not paid at the end of the week the property of the party indebted was to be levied on and sold by the Comptroller "as in cases of taxes in default, without further process of law."

The four plaintiffs refused to pay the inspection fees charged against them between October, 1910, and April, 1911. The Comptroller threatened to enforce collection by levy and sale, and they filed a Bill in the Circuit Court of Baltimore City seeking an injunction on the ground that the inspection fees were excessive and constituted a burden on interstate commerce and a violation of the provision of the Constitution that "No State shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws."

The case was heard on an agreed statement of facts which in addition to those above recited, showed that the act of April, 1910, was a reënactment of sections of a prior statute (Code of Maryland, c. 72) which was substantially like the present law with the same charge of one cent a bushel for measuring oysters.

Extracts from various annual Reports of the Comptroller were stipulated into the record. They show that the salaries of the inspectors amounted to about $14,000 per annum. After the deduction of salaries of these inspectors there was for 1909 and 1910 respectively, an excess of $22,010 and $28,680. This annual excess was carried to the credit of the Oyster Fund, provided for both in the repealed and reënacted Oyster Law. In the Report of the Comptroller for 1909 he says: "The tax as to one cent per bushel on all oysters inspected in this State, as enacted by Chapter 488 of the acts of 1908, has been sufficient not only to pay the cost of such inspections, but also to carry to this [Oyster] Fund the balance or excess of $22,010.95."

In the Report for 1910, he says: "During the fiscal year ending September 30, 1910, the receipts of taxes on oysters . . . amounted to $43,671.94. The disbursements for account of salaries of the measurers and inspectors of oysters were $14,991, leaving a balance or ex-

cess of $28,680.94, which was carred to the credit of the Maryland State Oyster Fund. . . .

"The receipts from dredging and tonging licenses show a heavy shrinkage by reason of fewer boats being engaged in the industry; nevertheless the excess tax of one cent per bushel on oysters sold, amounted to $28,680.94, making the fund self-sustaining for the year" (1911).

Section 30 of the Oyster Law referred to provides that the Oyster Fund shall only be drawn upon for "the purpose of maintaining sufficient and proper police regulations for the protection of fish and oysters in Maryland waters and in the payment of the officers and men and keeping in repair and supplying the necessary means of sailing the boats and vessels of the State Fishery Force."

After a hearing and consideration of the facts submitted, the Circuit Court held that the inspection tax was valid, refused to enjoin its collection, and dismissed the Bill. That judgment was affirmed by the Court of Appeals (117 Maryland, 335), and the case was brought here by writ of error.

*Mr. George Whitelock* and *Mr. W. Thomas Kemp* for plaintiffs in error:

The Federal Constitution vests Congress with the exclusive power to regulate interstate commerce, and prohibits a State from laying duties on imports or exports, except such as may be absolutely necessary for purposes of inspection. A State is accorded the right to pass inspection laws and to collect such amounts as may be necessary to pay the expense thereof. *Patapsco Guano Co.* v. *Board of Agriculture,* 171 U. S. 345; *Robbins* v. *Shelby Taxing District,* 120 U. S. 489; *Foote* v. *Clagett,* 116 Maryland, 235.

Under Article I the State of Maryland can impose no tax upon Virginia and New Jersey oysters, except such as may be reasonably necessary for inspection purposes to secure the due quality and measure of the oysters shipped

from Virginia and New Jersey into Maryland and inspected in Maryland at the termination of the shipment.

As to the scope of state inspection laws, see *Gibbons* v. *Ogden,* 9 Wheat. 1, 203; *Brown* v. *Maryland,* 12 Wheat. 419; *Foster* v. *New Orleans,* 94 U. S. 246; *Turner* v. *Maryland,* 107 U. S. 38, 55, aff'g 55 Maryland, 240; *People* v. *Compagnie Generale,* 107 U. S. 59, 62.

Interstate commerce can only be impeded by such local statutes as seek fairly and honestly to protect the citizens of a State from the fraud of short measures, or injury by introduction of dangerous or unwholesome articles.

To introduce a purely extraneous charge as a cost of inspection, or to appropriate the tax collected to a foreign purpose, would take the statute beyond the permitted limitation upon freedom of interstate commerce. It would no longer be "an inspection law," but "a revenue measure."

As to the extent to which courts pass upon constitutionality of inspection laws, see *Foote* v. *Clagett,* 116 Maryland, 240; *Brown* v. *Maryland,* 12 Wheat. 419, 466; *Robbins* v. *Shelby Taxing District,* 120 U. S. 489; *Leisy* v. *Hardin,* 135 U. S. 100, 108, all holding that Congress has the exclusive power over interstate commerce, and that state legislatures may enact only such laws pertaining thereto as come within certain well defined limitations.

The various state legislatures in the exercise of the privilege thus given them to enact proper inspection laws cannot also be regarded as the final judges of the legality of their own acts as would follow if the courts are not to be permitted to decide whether a particular legislature has exceeded its privilege and passed a law imposing a tax which, on its face, or in necessary effect, is to be devoted toward other purposes than the cost of inspection. *Turner* v. *Maryland,* 107 U. S. 38; *McLean* v. *Denver & R. G. R. Co.,* 203 U. S. 38, distinguished, and see *Mugler* v. *Kansas City,* 123 U. S. 623, 661; *In re Rebman,* 41 Fed. Rep. 867,

aff'd *Brimmer* v. *Rebman,* 138 U. S. 78; *Minnesota* v. *Barber,* 136 U. S. 313, 319; *Fertilizer Co.* v. *Board of Agriculture,* 43 Fed. Rep. 609; *Patapsco Guano Co.* v. *Board of Agriculture,* 171 U. S. 345; *Postal Company* v. *Taylor,* 192 U. S. 64; *West. Un. Tel. Co.* v. *Kansas,* 216 U. S. 1, 27; *Red "C" Oil Mfg. Co.* v. *Board of Agriculture,* 222 U. S. 381, 394; *Savage* v. *Jones,* 225 U. S. 501.

The cases cited hold that the Federal Constitution contemplates and permits only such state inspection taxes as are reasonable in amount, single in purpose, and assessed under a law designed for the protection of the health or safety of the community, as distinguished from a tax which, in whole or in part, levies tribute upon interstate commerce for the enrichment of the coffers of the taxing State itself.

Section 69, as reënacted, when tested by its effect on interstate commerce, imposes a tax or charge upon oysters shipped to the appellants from other States which is grossly excessive in amount and is expressly applied to other expenses than the legitimate cost of inspection, and is therefore unconstitutional both under the state and Federal Constitutions.

*Mr. Edgar Allan Poe,* Attorney General of the State of Maryland, for defendant in error:

The highest court of the State having decided that the act does not offend the state constitution, that question is not subject to review by this court, *Carstairs* v. *Cochrane,* 193 U. S. 10; *Rasmussen* v. *Idaho,* 181 U. S. 198; *Montana Co.* v. *St. Louis Mining Co.,* 152 U. S. 160; as it appears from the complaint and agreed statement that plaintiffs in error are not complaining of the imposition of any inspection charge upon oysters imported from foreign countries, § 10 of Art. I, Const. of United States has no bearing. The only question is whether c. 413, Acts Gen. Ass., Maryland, of 1910, is in contravention of that part of § 8,

Art. I, Const. of the United States relating to interstate commerce.

The vesting in Congress of exclusive power to regulate interstate commerce does not prohibit the States from passing, in the exercise of the police power, inspection laws, even though such laws operate upon articles of interstate commerce. *McLean* v. *Denver & R. G. R. Co.*, 203 U. S. 50; *Patapsco Guano Co.* v. *Board of Agriculture*, 171 U. S. 345; *Neilson* v. *Garza*, 2 Woods, 287; *Robbins* v. *Shelby Taxing District*, 120 U. S. 489.

The act is an inspection measure passed by virtue of the police power of the State for the purpose of protecting the oyster industry of the State and of preserving the health of the people of the State as well as for the purpose of protecting the people against fraudulent practices and of securing improvement in the quality of the oyster.

This court will take judicial notice of the fact that the oyster industry is one of the most important industries of the State of Maryland; that the oyster beds are owned by the State and furnish means of livelihood for a large part of the population thereof, and that the oyster itself is most delicate in character and readily susceptible of contamination, and therefore unless most careful inspection is exercised in connection with it and with its sale as an article of food, the public health will be most seriously menaced, and the wealth of the State greatly diminished.

The law in question does not impose an inspection charge so excessive as to challenge the good faith of the State in enacting it, and so unreasonable as to justify this court in declaring it unconstitutional.

The plaintiffs in error contend that the charge is unreasonable, because it produces revenue that is much more than sufficient to defray the salaries of the inspectors provided for by said act.

The state court held that § 69 is not an independent,

isolated enactment, but a component part of a comprehensive system of law embodied in Art. 72, Code of Pub. Gen. Laws, title "Oysters," containing 82 sections. Each section therefore must be read in connection with, and construed in reference to, all other sections. *State* v. *Popp,* 45 Maryland, 438.

The expense of inspection mentioned in § 69 cannot be separated from the wider inspection provided by other sections, or from the general expenses of the State Fishery Force which is charged with the whole duty of inspection, and the charge imposed is not excessive for the purposes of inspection. The fact that the proceeds of this charge go into the general oyster fund cannot affect the validity of the law. *State* v. *Applegarth,* 81 Maryland, 304.

The interpretation of Art. 72 of the Maryland Code as set forth by the highest court of Maryland is conclusive and binding upon this court, and completely and finally disposes of the contention advanced by plaintiffs in error. *Water Works Co.* v. *Tampa,* 199 U. S. 241; *Gatewood* v. *North Carolina,* 203 U. S. 531; *Linsdley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61.

Assuming, however, that this court were disposed to examine for itself the various provisions of Art. 72, the correctness of the interpretation of the state court is apparent.

The cost of inspection of oysters cannot be limited to the mere salaries of the measurers and inspectors, but must also include, in part at least, the expenses of maintaining the State Fishery Force, since that force is charged also with the task of assisting in carrying out the inspection laws of the State relating to oysters.

The scheme of oyster inspection contemplated by Art. 72 does not consist merely of the inspection by the twenty special inspectors provided by chapter 413. If that were all the inspection that the law furnished, the oyster industry in Maryland would soon become a thing of the past and

the oyster beds would in a short time be completely depleted and denuded. The law expressly and necessarily provides that the State Fishery Police shall not only act as inspectors, but shall also see that the laws relating to inspection are strictly and faithfully complied with.

In fact the inspection fee provided for by chapter 413 is not only not excessive, but is hardly sufficient to defray the proper cost of inspection.

The inspection charge of one cent per bushel, is not so unreasonable and disproportionate to the services rendered as to attack the good faith of the law and to justify this court in holding that the State, under the disguise of an inspection measure, is attempting to subserve other and different purposes prohibited by the Federal Constitution. *McLean* v. *Denver & R. G. R. Co.*, *supra; Standard Stock Food Co.* v. *Wright*, 225 U. S. 549.

MR. JUSTICE LAMAR, after making the foregoing statement of facts, delivered the opinion of the court.

The plaintiffs are engaged in the business of packing oysters in the City of Baltimore, and, during the season of 1910–11 purchased 736,000 bushels, of which 494,000 bushels were taken from the waters of the State of Maryland, 228,000 from the waters of the State of Virginia, and 14,118 from the State of New Jersey. These oysters were inspected in Baltimore by officers appointed under the provisions of the Maryland statute, which fixed an inspection fee of one cent per bushel to be paid, one-half by the seller and one-half by the buyer. The plaintiffs having refused to pay the inspection charge, assessed against them, litigation followed. The decision was against their claim of immunity under Art. I, §§ 8 and 10, of the Constitution. The case was then brought here on the ground that the inspection fee of one cent per bushel charge was excessive, that it interfered with interstate

commerce and levied an unlawful impost duty upon goods shipped into Maryland from other States.

1. The Constitution prohibits a State from regulating interstate commerce, but at the same time authorizes the collection of the necessary expenses of its inspection laws with the result that interstate commerce is to that extent lawfully burdened. Inspection is intended to determine the weight, condition, quantity and quality of merchandise to be sold within or beyond the State's borders. It is usually "accomplished by looking at or weighing or measuring the thing to be inspected," (*People* v. *Compagnie Gen. Transatlantique*, 107 U. S. 59, 62), though there may be cases in which some degree of supervision or policing is required in order to secure the proper certification of the property intended for sale or shipment. But while the two duties may sometimes overlap, there is a difference between policing and inspection, and if the State imposes upon one set of officers the performance of the two duties and pays the whole or a part of the joint expenses out of inspection fees, it must be made to appear that such tax does not materially exceed the cost of inspection—the burden in such cases being on those seeking to collect the combined charge. For if the cost of inspection is so intermingled with other expenses as to make it impossible to separate the two interstate commerce might be burdened by fees collected both for inspection and revenue,—for a lawful and for an unlawful purpose. Such is the contention here, the plaintiffs insisting that the fees are collected partly for inspecting oysters and partly for the cost of policing the waters of Chesapeake Bay; while the defendant insists that the charge is collected and spent solely for inspection.

2. Inspection necessarily involves expense and the power to fix the fee, to cover that expense, is left primarily to the legislature which must exercise discretion in determining the amount to be charged, since it is im-

possible to tell exactly how much will be realized under
the future operations of any law. Beside, receipts and
disbursements may so vary from time to time that the
surplus of one year may be needed to supply the deficiency of another. If, therefore, the fees exceed cost
by a sum not unreasonable, no question can arise as to the
validity of the tax so far as the amount of the charge is
concerned. And even if it appears that the sum collected
is beyond what is needed for inspection expenses, the
courts do not interfere, immediately on application,
because of the presumption that the Legislature will
reduce the fees to a proper sum. *Red "C" Oil Co.* v.
*North Carolina*, 222 U. S. 380, 393. But when the facts
show that what was known to be an unnecessary amount
has been levied, or that what has proved to be an unreasonable charge is continued, then, they are obliged to act
in the light of those facts and to give effect to the provision of the Constitution prohibiting the collection by a
State of more than is necessary for executing its inspection
laws. In such inquiry they treat the fees fixed by the
Legislature for inspection proper as *prima facie* reasonable
and do not enter into any nice calculation as to the difference between cost and collection; nor will they declare the
fees to be excessive unless it is made clearly to appear that
they are obviously and largely beyond what is needed to
pay for the inspection services rendered. Still, effect
must be given to the provision of the Constitution, which,
in unusual and emphatic terms, permits the State to
collect only what is "absolutely necessary." If, therefore, it is shown, that the fees are disproportionate to the
service rendered; or, that they include the cost of something beyond legitimate inspection to determine quality
and condition, the tax must be declared void because
such costs, by necessary operation obstruct the freedom of
commerce among the States. *McLean* v. *Denver & Rio
Grande R. R. Co.,* 203 U. S. 38; *Brimmer* v. *Rebman,* 138

U. S. 78, 83; *Postal Telegraph-Cable Co.* v. *Taylor,* 192 U. S. 64; *Patapsco Co.* v. *North Carolina,* 171 U. S. 345, 354; *Red "C" Oil Co.* v. *North Carolina,* 222 U. S. 380, 394; *Savage* v. *Jones,* 225 U. S. 501.

3. The unreasonableness of inspection fees may appear from the language of the act, as in *Foote* v. *Clagett,* 116 Maryland, 228, where a charge of two cents a bushel on oysters was collected, under a statute which provided that one-half was to be used for inspection and the other half was to be used for replacing shells on the natural beds for the purpose of increasing the oyster crop. That law was declared void by the Court of Appeals of Maryland, because of the provision that one-half of the inspection fee should be applied to other than the inspection purpose. The present statute contains language susceptible of the same construction, for it provides for an inspection fee of one cent per bushel to be "levied to help pay the salary of the inspectors and the other expenses of the State Fishery Force."

As the act itself makes a clear distinction between inspection expenses "and other expenses," the question at once arises as to whether the State did not provide for the collection of more than was "absolutely necessary for executing its inspection laws," thereby rendering the statute void because it included the cost of "something beyond legitimate inspection to determine quality and condition." *Brimmer* v. *Rebman,* 138 U. S. 83.

This objection, apparent on the face of the act, was sought to be answered by the suggestion that § 69, which levied the tax, was but "a part of an elaborate system of inspection running through the whole law, the enforcement of which was an inseparable part of the duty of the State Fishery Force," and that "the expense of such inspection is a component part of all the expenses of that force." 117 Maryland, 335. It was urged that, in addition to inspecting oysters as they were unloaded from ves-

sels, the Fishery Force performed other inspection duties
such as preventing, what were known as, "buy-boats"
from secretly carrying culls and other unmerchantable
oysters beyond the limits of the State for consumption or
transplanting.  But even if it be conceded that these, or
like services, could be classed as inspection within the
meaning of the Constitution, they form only a part of the
many and various duties imposed upon the Fishery Force.
That organization is supplied with men and boats and re-
quired to patrol, day and night, the waters of Chesapeake
Bay to prevent unlicensed boats from taking oysters and all
boats from improper tonging or dredging and to see that
shells and culls are returned to the natural beds—provi-
sions intended for the preservation of the supply rather
than determining the merchantable quality of oysters
offered for sale.  Other non-inspection duties might be
named, but the foregoing will suffice to show that inspec-
tion, policing and business expenses are to be paid for out
of inspection fees.

3. But the commingling of these various duties, paid
for out of a fund raised for inspection, does not neces-
sarily show that the fee is excessive.  For the presumption
of invalidity arising from such intermingling might be
met by carrying the burden of showing that, while the
statute required payment out of such joint fund, the col-
lections were not sufficient, but only helped, to pay the
definitely ascertained expenses of inspection.  The ques-
tion of reasonableness, therefore, may be considered in the
light of the practical operation of the law with a view of
determining, with reasonable certainty, the permanent
relation between the amount collected and the cost of
inspecting.  The Court of Appeals of Maryland, following
the intimation in *Turner* v. *Maryland*, 107 U. S. 38, de-
clined to pass on the question, upon the ground that a
court could not decide whether "a charge or duty under
an inspection law is or is not excessive."  That suggestion,

however, is opposed to the distinct rulings in *Brimmer* v. *Rebman*, 138 U. S. 83, and other cases above cited, which hold that it is the duty of the courts to pass upon the question, so as to protect the private citizen against the payment of inspection fees, larger than those authorized by the Constitution.

4. The Maryland statute provided for that kind of inspection that could be performed by 'looking at or measuring the thing to be inspected' (107 U. S. 62). It fixed the amount of salary to be paid the inspectors for such services, so that the cost was definitely known. The receipts, too, are reasonably certain in view of collections in the past.

The present statute is a reënactment of an old law levying the same charge of one cent per bushel. Under the operations of that law it appeared that about 4,000,000 bushels were inspected each year, producing a revenue of $40,000, one-third of which was sufficient to pay the salaries of the inspectors, the other two-thirds being appropriated to the "other expenses of the Fishery Force." The Comptroller in his Annual Reports called the attention of the legislature to the fact that, as required, this "excess" had been credited to the Oyster Fund. This fund was to be used—not for inspection purposes—but for "maintaining sufficient and proper police regulations for the protection of fish and oysters in Maryland waters and in the payment of the officers and men and keeping in repair and supplying the necessary means of sailing the boats and vessels of the State Fishery Force."

Even during the year following the enactment of the new statute and the failure of many to pay, pending the decision as to the validity of the tax, the collections were in excess of the cost of inspection. In the light of the operation of the previous act and the failure to show that the amount collected under the new, would not be more than was necessary for the expenses of inspection proper,

the present statute must be held to be void. The excess collected may have been valid as a tax on property in Maryland, but was a burden on interstate commerce when levied upon oysters coming from other States. This fact renders the whole tax void, because there is no claim that the intrastate commerce can be separated from the interstate shipments; or that the legislature would have taxed one and left the other untaxed.

*Judgment reversed and the case remanded for further proceedings not inconsistent with this opinion.*