## M. LUTHER PITTMAN, Clerk, *v.* HOME OWNERS' LOAN CORPORATION

[No. 64, October Term, 1938.]

*Decided December 1st, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*William L. Henderson, Assistant Attorney General,* with whom was *Herbert R. O'Conor, Attorney General,* on the brief, for the appellant.

*Thomas E. Barrett, Jr.,* and *W. F. Evans,* with whom were *John I. Rowe* and *Risque W. Plummer* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

In 1937, the General Assembly, by chapter 11 of the Acts of its Special Session of that year, added to article 81 of the Code, entitled "Revenue and Taxes," two sections, 213 and 214, under the sub-title "Tax on the Recordation of Instruments in Writing." Section 213 provides:

"A tax is hereby imposed upon every instrument of writing recorded or offered for record with the Clerks of the Circuit Courts of the respective Counties, or the Clerk of the Superior Court of Baltimore City, on and after June 1st, 1937, to and including September 30th, 1939, including mechanics liens, deeds, mortgages (except purchase money mortgages), chattel mortgages, bills of sale, conditional contracts of sale, leases, confessed judgments, magistrates' judgments, crop liens, deeds

of trust, and any and all other instruments of writing, so recorded or offered for record, which create liens or incumbrances on real or personal property, or convey title to real or personal property; provided, however, that said tax shall not apply to assignments of mortgages, purchase money mortgages, absolute or partial releases, or orders of satisfaction.

"The tax hereby imposed shall be at the rate of 10c for each $100, or fractional part thereof, of the actual consideration paid or to be paid, for the property transferred, in the case of instruments conveying title, and at the rate of 10c for each $100, or fractional part thereof, of the principal amount of the debt secured, in the case of instruments securing a debt, or reserving title as security for a debt.

"In addition to the tax hereby imposed, the Clerks shall collect a charge of 50c for each such instrument recorded or offered for record."

Included in section 214 are these provisions: "No such instrument shall be received for record by any Clerk of the Court unless and until a stamp is affixed to said instrument and canceled. * * * It shall be unlawful for any person to record any written instrument referred to in this sub-title without having provided for the payment of the tax and recordation charge as herein provided, and it shall be unlawful for any person to misrepresent the amount of the actual consideration in any such transaction."

The Act of Congress creating the Home Owners' Loan Corporation, June 13th, 1933, ch. 64, sec. 1 *et seq.*, 48 Stat. 128, 12 U. S. Code Ann. ch. 12, secs. 1461-1468, contains the following tax exemption clauses: "The bonds issued by the Corporation under this subsection shall be exempt, both as to principal and interest, from all taxation (except surtaxes, estate, inheritance, and gift taxes) now or hereafter imposed by the United States or any District, Territory, dependency, or possession thereof, or by any State, county, municipality or local taxing authority. The Corporation including its franchise, its capital, reserves and surplus, and its loans and income, shall like-

wise be exempt from such taxation; except that any real property of the Corporation shall be subject to taxation to the same extent, according to its value, as other real property is taxed."

A duly executed mortgage to the Home Owners' Loan Corporation on property in Baltimore City was presented by the corporation to the Clerk of the Superior Court for the purpose of having it recorded among the land records of the City, but the clerk refused to receive and record the mortgage because the corporation declined to pay the recordation tax and charge imposed by the Act of 1937, in addition to the sum of $2.50 specified by the clerk as properly payable for recording the instrument. The amount of the recording cost was tendered by the corporation, but it claimed immunity from the recordation tax charges by virtue of the quoted exemption clause of the federal statute and because of its character and functions as a governmental agency. The recording of the mortgage being necessary under the Maryland law for the adequate protection of the mortgagee's interest, the Home Owners' Loan Corporation petitioned the lower court for the writ of mandamus to compel the clerk to record the instrument upon payment of the ordinary legal fee for such service. A demurrer by the clerk to the petition having been overruled, with leave to answer, but that method of defense not having been utilized, the court ordered that the writ of mandamus sued for be issued. This appeal has resulted.

In our opinion the order below was justified, and its affirmance is required, by the decision of the Supreme Court in the case of *Federal Land Bank v. Crosland*, 261 U. S. 374, 43 S. Ct. 385, 67 L. Ed. 703. That decision reversed a decree of the Supreme Court of Alabama which refused to order the recording officer of Montgomery County to record a mortgage on receiving the usual recording fee, but without payment of an additional sum as a recordation tax. In the opinion of the United States Supreme Court, as delivered by Mr. Justice Holmes, the case was stated and discussed, in part, as follows:

"The General Revenue Act of the State, approved Sep-

tember 15, 1919 (Acts Ala. 1919, p. 420), by section 361, Schedule 71 provides that no mortgage shall be received for record—'unless the following privilege or license taxes shall have been paid upon such instrument before the same shall be offered for record, to wit: * * * Upon all instruments which shall be executed to secure an indebtedness of more than one hundred dollars there shall be paid the sum of fifteen cents for each one hundred dollars of such indebtedness, or fraction thereof, which is secured by said mortgage * * * to be paid for by the lender, and no such paper shall be received for record unless there is filed therewith a certificate that the privilege tax was paid by the lender.' Any probate judge who shall receive a mortgage without collecting the 'recording or registration tax,' etc., is made guilty of a misdemeanor and punished.

"On the other hand, the Federal Farm Loan Act of July 17, 1916, c. 245, sec. 26, provides that first mortgages executed to Federal Land Banks shall be deemed 'instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt from Federal, State, municipal, and local taxation.' 39 Stat. 360, 380 [12 U. S. Code Ann. sec. 931]. The validity of this provision is not questioned. *Smith v. Kansas City Title & Trust Co.*, 255 U. S. 180, 207, 212, 41 S. Ct. 243, 65 L. Ed. 577. Of course therefore it must prevail over any inconsistent laws of a State.

"The tax was sustained by the Supreme Court of the State and the petition for mandamus was ordered to be dismissed on the ground that the payment was optional; that the Federal Land Bank was not required to put its deed on record and that if it did it must pay whatever others were required to pay for the registration of its security. But the case is not quite so simple as that. The law of Alabama does make it practically necessary to record such deeds, because it overrides them if not recorded, in favor of any purchaser without notice. While it does so it cannot say that it leaves the Bank free to record or not. The Bank has a choice it is true but so has one who acts under duress. *The Eliza Lines*, 199

U. S. 119, 131, 26 S. Ct. 8, 50 L. Ed. 115, 4 Ann. Cas. 406. * * *

"Of course the State is not bound to furnish its registry for nothing. It may charge a reasonable fee to meet the expenses of the institution. But in this case the Legislature has honestly distinguished between the fee and the additional requirement that it frankly recognizes as a tax. If it attempted to disguise the tax by confounding the two, the Courts would be called upon to consider how far the charge exceeded the requirement of support, as when an excessive charge is made for inspecting articles in interstate commerce. *D. E. Foote & Co. v. Stanley,* 232 U. S. 494, 34 S. Ct. 377, 58 L. Ed. 698. But it has made no such attempt. It has levied a general tax on mortgages, using the condition attached to registration as a practical mode of collecting it. In doing so, by the construction given to the statute by the Supreme Court, it has included mortgages that it is not at liberty to reach. * * * It is said that the lender may collect the money in advance from the borrower. We do not perceive that this makes any difference. The statute says that the lender must pay the tax, but, whoever pays it it is a tax upon the mortgage and that is what is forbidden by the law of the United States."

It has been argued for the appellant that the *Crosland* case is distinguishable because of the provisions in the Federal Farm Loan Act, requiring payment of the mortgage recording tax by the lender, and declaring mortgages held by the Federal Land Bank to be instrumentalities of the United States. Those differences appear to us immaterial. By the federal act, with which this case is directly concerned, the Home Owners' Loan Corporation is expressly declared to be "an instrumentality of the United States," and the mortgages securing its loans are acquired by it in that capacity. Consequently we are unable to differentiate them from mortgages of the Federal Land Bank with respect to such a question as we have now under consideration. The provision for the payment of the tax by the lender was regarded in the *Crosland* case as having no determining significance.

It was further argued, in effect, that the case of *Federal Land Bank v. Crosland,* if not distinguishable from the present case, may be disregarded as a precedent because of the trend of later decisions of the Supreme Court, which are said to be at variance with the theory on which that case was determined. The cases cited to support this theory are *James v. Dravo Contracting Co.,* 302 U. S. 134, 58 S. Ct. 208, 82 L. Ed. 155; *Silas Mason Co. v. State Tax Commission,* 302 U. S. 186, 58 S. Ct. 223, 82 L. Ed. 187; *Atkinson v. State Tax Commission,* 303 U. S. 20, 58 S. Ct. 419, 82 L. Ed. 621; *Helvering v. Gerhardt,* 304 U. S. 405, 58 S. Ct. 969, 82 L. Ed. 1427; *Allen v. Regents of University System of Georgia,* 304 U. S. 439, 58 S. Ct. 980, 82 L. Ed. 1448; and *Helvering v. Mountain Producers Corp.,* 303 U. S. 376, 58 S. Ct. 623, 82 L. Ed. 907. In the first three of those cases the Supreme Court was considering questions as to the liability to state income taxes of earnings by contractors in the performance of work for the Federal Government. Each of the other three cases involved the claim of a state agency, or its employees, or the lessee of state property, to immunity from federal income taxes. None of the opinions in those cases made any qualifying reference to the *Crosland* case. As the decision in that case was concerned with a question closely analogous to the one here raised, and as it has not been overruled, we may not disregard it upon the theory that it is inconsistent with adjudications of other questions in the later cases which have been cited. The Crosland decision affords an authoritative precedent, and a sufficient ground, for the determination of this case, and hence there is no occasion to analyze in this opinion the principles and limitations of intergovernmental immunity which affect the solution of such a problem as this case has presented.

*Order affirmed, with costs.*

PARKE and SLOAN, JJ., dissent.