HAMMOND, Attorney General, et al. *v.* PHILA-
DELPHIA ELECTRIC POWER CO., et al.

[No. 68, October Term, 1948.]

180

*Decided January 21, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, and HENDERSON, JJ., and EMORY H. NILES, J., of the Supreme Bench of Baltimore City, specially assigned.

*Hall Hammond, Attorney General,* and *Joseph D. Buscher, Special Assistant Attorney General,* for the appellants.

*William C. Walsh* and *A. Walter Kraus, Jr.,* with whom were *Miles, Walsh, O'Brien & Morris* on the brief, for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

This case involves the construction and application of the recordation tax codified as Sec. 220 of Art. 81 of the Code. This tax was first established by the general taxation act of 1937, Special Session, Chapter 11. Sec. 213 of that act read in part: "A tax is hereby imposed upon every instrument of writing recorded or offered for record with the Clerks of the Circuit Courts of the respective counties, or with the Clerk of the Superior Court of Baltimore City, on and after June 1, 1937, to

and including September 30, 1939, including * * * mortgages (except purchase money mortgages), * * * deeds of trust, and any and all other instruments of writing, so recorded or offered for record, which create liens or incumbrances on real or personal property". There was a proviso that the tax should not apply to assignments of mortgages, purchase money mortgages, absolute or partial releases, or orders of satisfaction. The tax was at the rate of 10¢ for each $100.00 or fractional part thereof of the principal amount of the debt secured, in the case of instruments securing a debt or reserving title as security for a debt.

By Chapter 277 of the Acts of 1939, Sec. 213 was repealed and re-enacted. This act was not limited in time, as was the Act of 1937, and for the first time there were inserted the exceptions which are the basis of the contentions in the case before us. These exceptions are those found in the Code (1947 Supp.), Art. 81, Sec. 220, Subsections (h) and (k). These sub-sections are as follows:

"(h) No tax shall be required for the recordation of any instrument securing a debt that merely confirms, corrects, modifies or supplements an instrument previously recorded, or conveys or pledges property in addition to, or in substitution for the property originally conveyed or pledged, if such supplemental instrument does not increase the amount of the debt secured by the instrument previously recorded.

"(k) If the total amount of the debt which may become secured by any instrument securing a debt shall not have been incurred at the time such instrument is offered for record, the tax shall be computed solely on the principal amount of the debt then incurred and secured by such instrument. Before any additional debt is incurred which is to be secured by an instrument previously recorded, the debtor shall file with the Clerks of the Courts with which such instrument has been recorded a duly verified statement showing the amount of such additional debt and shall pay the tax with respect thereto upon, but only upon, the amount of such additional debt

so secured which has been incurred after May 31, 1937, and with respect to which such tax shall not theretofore have been paid, less the principal amount of any debt then outstanding and secured by such instrument which is to be paid or refunded out of the proceeds of such additional debt."

At the time this tax was first imposed there was on record a mortgage indenture, dated February 1, 1926, between the Philadelphia Electric Power Company and the Susquehanna Power Company, appellees here, to the Fidelity Trust Company of Philadelphia to secure $60,000,000.00 of first mortgage gold $5\frac{1}{2}\%$ interest bonds of the Philadelphia Electric Power Company. The proceeds of the sale of these bonds were to be used to construct a dam across the Susquehanna River and a hydroelectric plant at Conowingo, Maryland. Pursuant to the terms of this indenture, the Companies issued and sold $36,000,000.00 worth of bonds. $2,000,000.00 in addition were issued, but retained by the Trustee, and not offered for sale to the public. The mortgage was duly recorded in Cecil County, Maryland, but as its date was prior to the passage of the recordation tax statutes, no tax was imposed for its recording.

According to the stipulation of facts filed in the case, on June 18, 1946, the Philadelphia Electric Power Company entered into a purchase agreement to sell $30,000,000.00 of its first mortgage bonds bearing interest at $2\frac{5}{8}\%$, and on July 1, 1946, these $30,000,000.00 worth of bonds were executed by the Power Company, authenticated by Fidelity-Philadelphia Trust Company, Trustee, and were delivered by the Company to the purchasers. Also on July 1, 1946, the Power Company deposited with the Fidelity-Philadelphia Trust Company $32,183,807.50, this sum being sufficient for the redemption of all the outstanding $5\frac{1}{2}\%$ bonds issued under the mortgage of February 1, 1926, with accrued interest to August 1, 1946, and a premium of $5\frac{1}{2}\%$ of the principal amount which was $29,731,000.00. On the same date, and subsequently, the Power Company gave notice of the

redemption on August 1, 1946, of all of these 5½% bonds and nearly all of the holders of these bonds presented them for redemption. On March 24, 1948, there remained only $60,000 principal amount of said bonds unredeemed.

On June 26, 1948, a supplemental indenture was entered into between Philadelphia Electric Power Company, Susquehanna Power Company, and Fidelity-Philadelphia Trust Company, successor to Fidelity Trust Company. This instrument was dated as of July 1, 1946, and was offered for recording in the office of the Clerk of the Circuit Court for Cecil County. This supplemental indenture authorized the issuance of the $30,000,000.00 worth of 2⅝% bonds above mentioned, and, under its terms, the proceeds of the sale of these bonds were to be used, so far as required, to redeem and pay off the bonds outstanding under the mortgage of February 1, 1926. This original mortgage provided that the amount of bonds to be issued thereunder was to be limited to 75% of the cost of the initial project. The supplemental indenture states that the actual cost of this project was $49,047,699.85. The Clerk of the Circuit Court for Cecil County refused to accept the supplemental indenture for recording until a recordation tax was paid under Sec. 220 of Art. 81. It appearing that 86.42% of all the properties subject to the lien of the mortgage of February 1, 1926 and the supplemental indenture of July 1, 1946 were situated within the State of Maryland, the recordation tax was calculated on 86.42% of the $30,000,000.00 securities to be issued under the latter, and amounted to $25,926.00. This amount the Company paid under protest, and subsequently filed with the clerk a claim for refund. This was denied, and on March 20, 1947, the appellees filed a claim for refund of said tax with the State Tax Commission. This refund was allowed in the amount of $25,693.63. The difference is the tax on the proceeds of 86.42% of the additional debt ($269,000), amounting to $232.47, which the appellees admit was due. An appeal was taken by the Attorney-

General on behalf of the State and by the Comptroller of the Treasury of the State of Maryland to the Baltimore City Court. The action of the State Tax Commission was affirmed, and the Attorney-General and the Comptroller appealed to this court.

The recordation tax statute has been before this court several times, but the question now before us is only indirectly touched upon in any of the cases. In the case of *Pittman v. Housing Authority*, 180 Md. 457, 25 A. 2d 466, the question was whether the Housing Authority of Baltimore City was exempt from the tax because of a general exemption in the Maryland Housing Authority's law from all taxation and special assessments of the city, the State, or any political subdivision thereof. We held to the firmly established principle that exemptions from taxation are strictly construed in favor of the State and that the exemption in the Housing Authority's law did not apply to taxes imposed upon the enjoyment of a privilege. Our conclusion was that the Housing Authority was not exempt from the recordation tax. In *State Tax Commission v. Potomac Electric Power Co.*, 182 Md. 111, 32 A. 2d 382, an original mortgage given by the Power Company had been recorded in Prince George's and Montgomery Counties in 1936, prior to the passage of the recordation statute. In 1939 and 1940, three additional mortgages were recorded in Prince George's County and the recordation tax paid on those mortgages, which secured an additional bond issue. In 1942, a supplemental mortgage reciting after-acquired property was recorded in Prince George's and Montgomery Counties. A counterpart of the first mortgage and the four subsequent mortgages was offered to the Clerk of the Circuit Court for Charles County, and he refused to record them unless the recordation tax was paid. This was done under protest, and appropriate action was taken to get a refund. This was allowed by the Circuit Court for Prince George's County, and we affirmed its order. We held in that case that the statute would be construed to effectuate the intention of the Legislature and would not be given a retro-

spective operation. In the case of *Pittman v. Home Owners' Loan Corporation,* 175 Md. 512, 2 A. 2d 689, the Clerk of the Superior Court of Baltimore City was required to record a mortgage made to the Home Owners' Loan Corporation without the payment of the recordation tax because the court followed the Supreme Court case of *Federal Land Bank of New Orleans v. Crosland,* 261 U. S. 374, 43 S. Ct. 385, 67 L. Ed. 703, 29 A. L. R. 1. In that case, the court held that the tax was not a reasonable fee to meet the expenses of registry, but was really a tax on mortgages, using the condition attached to registration as a practical mode of collecting. The *Pittman-Home Owners' Loan* case went on *certiorari* to the Supreme Court of the United States, and was there affirmed. *Pittman v. Home Owners' Loan Corp.,* 308 U. S. 21, 60 S. Ct. 15, 17, 84 L. Ed. 11, 124 A. L. R. 1263. In this case the Supreme Court, referring to the Maryland statute, said: "Here, also, the tax is imposed upon the mortgage and is graded according to the amount of the loan, and the condition attached to the registration is a practical method of collection." It was held therefore that the exemption of the loans of the Home Owners' Loan Corporation was broad enough to cover the recordation of its mortgage, and that the action of Congress in safeguarding the operations of the Corporation by providing the described immunity was constitutional and valid.

We have here no constitutional immunity claimed by a Federal corporation, such as existed in the *Home Owners' Loan* case. The question is the construction of the act itself, and whether the appellees are exempt under its terms. In the consideration of this question, there must be borne in mind the principle already referred to, that every exemption must be strictly construed. As Chief Judge McSherry said in the case of *Sindall v. Baltimore City,* 93 Md. 526, at page 530, 49 A. 645, 646: "The taxing power is never presumed to be surrendered, and therefore every assertion that it has been relinquished must, to be efficacious, be distinctly supported by clear and unambiguous legislative enactment. To doubt is to deny

an exemption." It does not matter that the indenture of July 1, 1946 is called a "supplemental indenture". It may be supplemental in many respects to the original indenture, but the question before us is whether it is supplemental under the terms of the exemption granted by the Legislature in sub-paragraph (h) that exempts from the payment of the recordation tax an instrument securing a debt that "merely confirms, corrects, modifies, or supplements an instrument previously recorded * * * if such supplemental instrument does not increase the amount of the debt secured by the instrument previously recorded." The indenture of July 1, 1946, does in some respects, supplement the original mortgage, but its real purpose is to form the basis of a refunding operation by means of which the debtor companies retired bonds on which they paid 5½% interest and substituted in their place bonds on which they paid 2⅝% interest. While the mortgagors were the same and the trustee was the successor of the original trustee, the new bonds were not issued to the holders of the old bonds, but were sold to other purchasers and the proceeds used to pay off the old bonds.

The appellees contend, however, that the indenture of July 1, 1946 is, in reality a supplemental indenture in all respects because it operates merely to confirm the equitable lien of the original indenture on after-acquired property. They show that the bonds issued under the latter agreement are secured by the lien of the original indenture, and that the latter has never been released of record. From these facts they conclude that the supplemental indenture did not create a new lien, and that the $30,000,000.00 of bonds issued under it were secured by the original indenture.

There is a provision in the New York tax law, similar to that in Section 220, sub-section (h), but no such exemption for refunding operations as is found in sub-section (k). The New York cases, construing the statute of that State, recognize the difference between situations where the old mortgage debt is extinguished and a new

debt created, and situations where the debt is the same, although there is a new interest rate and a new date of payment. In the first class of cases the new instrument is held not to be a supplemental indenture within the meaning of the New York recordation statute and the tax is imposed. *People ex rel. Jewelers' Bldg. Corporation v. State Tax Commission,* 214 App. Div. 99, 210 N. Y. S. 263, affirmed *per curiam* 241 N. Y. 524, 150 N. E. 539. *People ex. rel. Astor Trust Co. v. State Tax Commission,* 174 App. Div. 320, 160 N. Y. S. 854, affirmed Appellate Div. 174 App. Div. 936, 160 N. Y. S. 859. *People v. Boston & M. R. R.,* 202 App. Div. 54, 195 N. Y. S. 402. *People ex rel. Westbrook-Buffalo, Inc. v. State Tax Commission,* 257 App. Div. 705, 15 N. Y. S. 2d 525. *Application of Erie R. Co.,* 260 App. Div. 268, 21 N. Y. S. 2d 513. The cases are not altogether clear in their reasoning, but in general it may be said that where there is a new creditor, a new loan and a new contract relationship, and where the old note holders and their debts are paid and these debts extinguished, where one mortgage is paid by a new agreement, even though the latter is made with the same mortgagee, the new agreement is taxable. "There is a new transaction with a new tax." *United States Title Guaranty Co. v. State Tax Commission,* 230 N. Y. 102, 129 N. E. 222, 224.

The second class of cases is illustrated by *New York State Gas & Electric Corp. v. Gilchrist,* 209 App. Div. 771, 205 N. Y. S. 501, affirmed 240 N. Y. 552, 148 N. E. 701, and *Park & 46th St. Corporation v. State Tax Commission,* 295 N. Y. 173, 65 N. E. 2d 763. In these two cases, the new instruments extended the dates of maturing of the mortgage debts, and reduced the rates of interest, but did not change the principal debts or obligations. The court in the first of the two cases, (quoted in the second) said: "There was here the creation of no new relationship; there was no new creditor, no new debtor, no new loan. It must be remembered that it is the principal sum of a loan, not the interest to be paid thereupon, which measures a mortgage tax. Here, there was no

new principal sum, although there was a new interest rate and a new date of payment." [209 App. Div. 771, 205 N. Y. S. 504] The tax was held not payable, and in the *Park & 46th St. Corp.* case, the *Jewelers' Bldg. Corporation* case, *supra*, was distinguished, because, in that case, the new instrument expressly extinguished the old debt. The court in the *Park & 46th St. Corp.* case said that in the case before it, the new indenture expressly preserved the old debt and provided that the lien thereof should not be cancelled.

The Michigan courts also adopts the rule that, if the new mortgage creates a new or substituted lien, the tax is payable. *Steel & Tube Co. of America v. State Tax Commission*, 225 Mich. 59, 195 N. W. 680; *Kerschensteiner v. North Michigan Land Co.*, 244 Mich. 403, 221 N. W. 322. A restricted construction of the statute has also been made in *South Dakota Eastern Dakota Electric Co. v. Kirlin*, 48 S. D. 462, 205 N. W. 33.

The Maryland statute, as we have shown, has been construed by the Supreme Court as imposing a tax on the mortgage graded according to the amount of the loan. *Pittman v. Home Owners' Loan, supra.* The debt, therefore, is the important factor. In the case before us the debt is the same, at least to the extent of the unpaid bonds outstanding under the mortgage of February 1, 1926. The creditors are not the same, but the trustee representing them is. The old mortgage is not extinguished, and its lien is preserved. The words at the end of Sec. 220 (sub-section (k)), in our opinion, contemplate an exemption from the tax for any debt by an original mortgage which is to be refunded. While there is no refunding provision in the New York law, it is probable, under the decisions already quoted, that such an instrument as that of July 1, 1946 would be exempt from taxation in that state. We do not have to construe the New York statute, but we cannot see how the appellees can be compelled to pay the recordation tax in the face of our statutory provision. Refunding cannot be accomplished through the same instrument which creates the original

debt without some additional agreement, and to suppose that the legislature intended to exempt only such refunding as can be done through the original mortgage alone is to convict it of enacting an absurdity. If the refunding is accomplished without the need of the original mortgage, then the new instrument is not supplemental, but original, and the tax must be paid. But if the lien of the old instrument is retained, only the evidence of the same debt is changed, if the new instrument cannot operate without the retention of the old, then we think the last is supplemental to the first within the meaning of our statute, and is exempted from the tax.

For the reasons stated the order of the lower court will be affirmed.

*Order affirmed, with costs.*

HENDERSON, J., filed the following dissenting opinion:

I cannot agree with the conclusion of the court in this case that the instrument offered for record "merely * * * modifies or supplements an instrument previously recorded". The previous instrument contained a clause limiting the amount of bonds that could be issued thereunder to 75% of the initial cost of the project. It is conceded that this cost was less than $50,000,000, so that the limit is about $37,000,000 of bonds. The company issued and sold to the public $36,000,000 of bonds, and issued $2,000,000 more, which were retained by the trustee. It is perfectly clear on the record, indeed conceded in argument, that no new or additional bonds could be issued under the original instrument. It follows that the present instrument creates a new debt and is indispensable to the creation of such debt. The retention of the lien of the first instrument can only be regarded as further security for the new debt created. The new instrument is not supplemental but original; certainly not *merely* supplemental.

Nor can I find an exemption in the language of section 220 (k). That section does not purport to cover all

refunding operations. It is limited, in the first instance, to cases where "the total amount of the debt which may become secured by any instrument securing a debt shall not have been incurred at the time such instrument is offered for record". As pointed out above, all of the bonds authorized by the first instrument were issued, so that no additional debt could be incurred under that instrument. The section contemplates that where additional bonds are issued under an "open-ended" instrument, the debtor shall file "a duly verified statement showing the amount of such additional debt," not a new instrument. In computing the tax on "such additional debt" credit is allowed for bonds previously issued, on which the tax was calculated and paid, which are "paid or refunded out of the proceeds of such additional debt". This is the only reference to refunding in the whole statute, and it seems to be clearly limited to a case where additional bonds are issued under one original instrument. I find no room for construction in the language quoted. It is not for this court to say that it is absurd for the legislature to limit the exemption to such refunding as can be done through an original mortgage alone. Indeed as I read the cases cited, that is precisely the distinction drawn by the New York Courts. I think the order of the lower court should be reversed.