477 A.2d 1218

**PRINCE GEORGE'S COUNTY, Maryland**

v.

**John B. McMAHON, Jr., et al.**

**No. 1563, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

July 16, 1984.

Carl Harris, Upper Marlboro, with whom were Thomas P. Smith, County Atty. for Prince George's County, Michael O. Connaughton, Deputy County Atty., and Frederick J. Wieker, Associate County Atty., on the brief, for appellant.

Stephen H. Sachs, Atty. Gen., and Catherine M. Shultz, Asst. Atty. Gen. for amicus curiae, State of Md.

Keith A. Rosenberg, Washington, D.C., with whom were Meyer, Faller & Weisman, P.C., Washington, D.C. on the brief, for appellees.

Argued before BISHOP, ADKINS and BELL, JJ.

BELL, Judge.

We are asked in this case to decide the basis upon which the state recordation tax and the local Prince George's County transfer tax should be computed for a wraparound

deed of trust.[1] We hold that based on Article 81 § 277 of the Md.Code, the recordation tax should be assessed on the "principal amount of the debt then incurred" by the transaction, which includes the amount of a prior debt only if extinguished by the proceeds of the new deed of trust. We further hold that based on Prince George's County Code § 10–187, the local transfer taxes, upon refinancing, are computed only on the amount above the original deeds of trust regardless of whether the prior debts are extinguished by the new deed of trust.

## BACKGROUND

On August 30, 1973, John B. McMahon, Jr. and Manna Equities, Inc., Trustees and General Partners for Country Club Towers Limited Partnership (Trustees) purchased Country Club Towers Apartments, Bladensburg, Prince George's County, Maryland for $1,580,000.00. To finance the transaction, the Trustees assumed an existing first trust on the property in the amount of $932,588.00 and the seller took back a deferred purchase trust in the amount of $347,411.00.

On April 16, 1974, the Trustees paid off the deferred purchase trust of $347,411.00 and placed a new second trust on the property in the amount of $400,000.00.

When the 1974 loan in the amount of $400,000.00 was coming due, the Trustees, on July 11, 1975, negotiated an agreement with Waldorf Federal Savings & Loan whereby the Trustees borrowed $1,318,550.00 evidenced by a promissory note and a wraparound deed of trust. Of the $1,318,-550.00 borrowed, $875,773.00 was placed in escrow, $400,-000.00 was used to pay off the 1974 trust, and the Trustees retained $42,777.00 in cash. The following pertinent documents were executed at settlement and duly recorded.

---

1. See definition of wraparound deed of trust, *infra* at 686.

(1) Deed of Trust evidencing indebtedness to Waldorf Federal in the amount of $1,318,550.00 and secured by the subject property.

(2) Agreement evidencing the continued existence of the first trust and authorizing Waldorf Federal to make monthly payments on the first trust and for other purposes.

(3) Escrow and Trust Agreement evidencing the existence of the first trust and authorizing Waldorf Federal to secure payment of the first trust in the then current amount of $875,773.38 which was part of the $1,318,550.00 secured by Waldorf Federal to be placed in escrow.

At settlement, Waldorf Federal collected $2,901.80 for the payment of recordation taxes ($2.20 per $500 on $1,318,550); and $9,185.50 for the payment of county transfer taxes (1% on $918,550 [$1,318,550 − $400,000]), for a total of $12,087.30. In a timely manner, the Trustees requested a refund from the County asserting that the taxes should only have been assessed on $42,777 (Recordation tax of $70.92 and transfer tax of $427.77 for a total of $498.69). This request was denied. Thereafter, the Trustees filed a timely appeal of the denial of the request for a refund to the Maryland Tax Court which ruled in their favor. Prince George's County appealed the decision of the Tax Court to the Circuit Court of Prince George's County which affirmed.

Appellant now contends that the Circuit Court erred in deciding that the recordation tax and transfer tax should have been assessed on $42,777.00 rather than $1,318,550.00 for the recordation tax and $918,550.00 for the transfer tax.

## DISCUSSION

To address Appellant's contentions, we will first discuss the application of the recordation tax, and then the application of the transfer tax, to each component of the $1,318,550.00 borrowed: $42,777.00 concededly representing the

"new money" borrowed over the 1974 deed of trust and the original deed of trust; $400,000.00 representing the amount utilized to extinguish the 1974 deed of trust; and $875,-773.38 representing the amount to be held in escrow to pay off the first deed of trust.

Before we proceed, however, we will briefly discuss the concept of a wraparound mortgage (or deed of trust).

The wraparound mortgage was introduced in the United States about twenty years ago in an effort to combat the high interest rates of secondary financing in real estate transactions. It is defined as

> [a] second mortgage which wraps around or exists in addition to a first or other mortgages. Form of secondary financing typically used on older properties having first mortgages with low interest rates in which a lender assumes the developer's first mortgage obligation and also loans additional money, taking back from developer a junior mortgage in total amount at an intermediate interest rate.

Black's Law Dictionary 1441 (rev. 5th ed. 1979). The wraparound mortgage is often utilized when prepayment of an existing first mortgage is impractical because the existing mortgage carries a steep prepayment penalty, or as in this case it is utilized to enable the borrower to obtain a loan. One of the negotiated terms of this loan was that Waldorf Federal would earn a premium based on the increased rate over the entire amount of the debt.

The wraparound mortgage differs from a conventional second mortgage in that the face amount includes an amount necessary to cover the first mortgage payments and it also incorporates an agreement between the parties for payment of the debt on the first mortgage. The face amount of the wraparound mortgage is the sum of the outstanding balance under the first mortgage plus the amount of additional funds, to be disbursed by the wraparound mortgagee, with an annual debt service computed on this face amount. The wraparound mortgage interest rate

is generally higher than the interest rate on the first mortgage, but is normally equal to, or slightly less than, the then market rate for conventional first mortgage loans. *See generally* F. Gunning, "The Wraparound Mortgage, Friend or UFO?" 2 Real Est.Rev. 35–38 (1972).

Ordinarily, the wraparound lender will make a loan based on the current value of the property, but because the first mortgage indebtedness is not discharged, the lender will advance to the borrower the difference between the face amount of the wraparound loan and the principal amount of the continuing indebtedness. *See* Madison and Dwyer, The Law of Real Estate Financing § 704[3] (1981). The wraparound mortgagor does not necessarily assume the first mortgage but rather pays the debt service out of a portion of the proceeds of the mortgage. Madison and Dwyer, *supra* at § 7.04[3]. Since the contract rate is computed on the sum of the first mortgage and any additional funds disbursed, a much higher effective rate of interest on the additional funds results. Thus, the wraparound lender's motivation is that he expects to obtain the best effective yield, with the least amount of cash investment.

With these concepts in mind, we turn to the case at hand.

The standard for review of decisions of the Maryland Tax Court by the circuit court is controlled by Md.Code (1957 Cum.Supp.1983), Article 81 § 229(*o* ), which provides as follows:

> In any case, the circuit court for the county shall determine the matter upon the record made in Maryland Tax Court. The circuit court shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record. In other cases, the circuit court may affirm, reverse, remand or modify the order appealed from.

The circuit court held that the decision by the Maryland Tax Court was "well founded". We agree in part and disagree in part for reasons we will set forth.

## A. *Recordation Tax*

In Maryland, a state recordation tax is imposed pursuant to Article 81 § 277(a), upon

> every instrument of writing conveying title to real or personal property, or creating liens or encumbrances upon real or personal property, offered for record.... The term 'instruments of writing' shall include ... mortgages ... deeds of trusts ....

The tax on deeds of trust and other instruments securing debts is assessed on "the principal amount of the debt secured." Art. 81 § 277(b). Article 81 Section 277(k) (1957 Repl.Vol.1980) further provides:

> If the total amount of the debt which may become secured by any instrument securing a debt shall not have been incurred at the time such instrument is offered for record, the tax shall be computed solely in the principal amount of the debt then incurred and secured by such instrument....

The first component of the $1,318,550.00, the $42,777.00, represents additional cash received by Appellees at the time of the transaction. There is no dispute that recordation tax was properly collected on this amount.

The second component, the $400,000.00, represents funds received by Appellees which were utilized to pay off the 1974 second deed of trust. The State in its *amicus curiae* brief [2] argues that the case of *Hampton Plaza Joint Venture, Inc. v. Clerk, Circuit Court for Balt. Co.,* 55 Md.App. 50, 460 A.2d 633 (1983) is dispositive of any assertion that no recordation tax should be assessed on the $400,000.00.

In *Hampton Plaza,* three deeds of trust had been executed by Hampton Plaza Joint Venture to Maryland National Bank. The three notes secured by the deeds of trust

---

**2.** The State of Maryland requested leave to file an *amicus curiae* brief because in every subdivision other than Prince George's County, State recordation tax is collected by State constitutional officers, the clerks of the circuit courts. The State did not address the issue of whether county transfer tax was properly assessed.

were subsequently purchased by different corporations. Fourth and fifth deeds of trust were ultimately executed and recorded, the proceeds of which were disbursed to pay off the notes secured by the prior deeds of trust. The new deeds of trust did not alter the total indebtedness of Hampton Plaza, nevertheless recordation tax was paid under protest.

The question before the court was whether the transaction constituted a new transaction or qualified for an exemption under Art. 81 § 277(h) as a supplemental instrument securing a debt.[3] This Court held that since the new trust had the effect of extinguishing the prior instruments, it could not be considered supplemental and thereby qualify for an exemption. Relying on *Hammond v. Philadelphia Elec. Pwr. Co.*, 192 Md. 179, 188, 63 A.2d 759 (1949), this Court reiterated the principle that "where the old note holders and their debts are paid and these debts extinguished, where one mortgage is paid by a new agreement, ... the new agreement is taxable." *Hampton Plaza, supra*, 55 Md.App. at 54, 460 A.2d 633.

■ Turning to the instant case, based on *Hampton Plaza*, we hold that the $400,000.00 component was subject to recordation tax because the debt was extinguished by the proceeds of the new wraparound deed of trust. Thus the court erred in granting a refund in the amount of $1,760.00 ($2.20 per $500 based on $400,000.00).

■ As to the $875,773.00 placed in escrow, it is contended that it constitutes a part of the total indebtedness "then incurred" by the wraparound deed of trust because the deed of trust and the accompanying instruments provide that all of the $1,318,550.00 debt was incurred and because the Trustees are liable for monthly payments of the entire

---

**3.** Art. 81 § 277(h) provides "No tax shall be required for the recordation of any instrument securing a debt that merely confirms, corrects, modifies or supplements an instrument previously recorded, ... if such supplemental instrument does not increase the amount of the debt secured by the instrument previously recorded."

$1,318,550.00. Appellant further argues that the § 277(k) exemption only applies where the parties to the second deed of trust were the same as the parties to the first deed of trust which remained intact. Appellant cites *Hammond v. Elec. Pwr. Co., supra* and *Howard County v. Howard Research & Development Corp.*, 34 Md.App. 411, 367 A.2d 18 (1977) in support.

■ We disagree with Appellant. We recognize that in Maryland, exemptions from taxation are construed in favor of the State, *Hammond, supra;* nevertheless, in this case since section 277(k) is clear on its face as to its meaning, we need not apply that rule of statutory interpretation. Article 81 § 277(k) provides "the tax shall be computed solely in the principal amount of the debt *then* incurred." By definition, a wraparound trust does not extinguish the original trust since the payments to the original trust are made pursuant to an escrow agreement. Likewise, by definition, the original debt could not be "then incurred". As stated *supra,* the face amount of the wraparound mortgage is the sum of the outstanding balance under the first mortgage plus the amount of the additional funds disbursed by the wraparound. In this case, the outstanding balance of the first deed of trust was $875,773.00. The remaining amount over and above the $875,773.00 was $42,777.00 plus $400,000.00.

The distinction between the $400,000.00 and the $875,773.00 is that the former debt was extinguished by the proceeds of the wraparound and thus was part of the principal debt incurred; whereas the latter debt was not extinguished, but is simply being paid off via an escrow agreement.

Furthermore, our decision is consistent with the cases of *Hammond v. Elec. Pwr. Co., supra* and *Howard County v. Howard Research & Development Corp., supra*. In *Hammond*, the power company in 1946 issued what it called a supplemental indenture authorizing the issuance of 30 million dollars worth of 2⅝% bonds to redeem outstanding 5½% bonds in the same amount that had been issued in

conjunction with a mortgage that had been executed in 1926. In construing § 277(k) and § 277(h), the Court of Appeals stated at pp. 189–190

> The old mortgage is not extinguished and its lien is preserved. The words at the end of Sec. 220 (sub-section (k)), in our opinion, contemplate an exemption from the tax for any debt by an original mortgage which is to be refunded.... [W]e cannot see how the appellees can be compelled to pay the recordation tax in the face of our statutory provision. Refunding cannot be accomplished through the same instrument which creates the original debt without some additional agreement, and to suppose that the legislature intended to exempt only such refunding as can be done through the original mortgage alone is to convict it of enacting an absurdity. If the refunding is accomplished without the need of the original mortgage, then the new instrument is not supplemental, but original, and the tax must be paid. But if the lien of the old instrument is retained, only the evidence of the same debt is changed, if the new instrument cannot operate without the retention of the old, then we think the last is supplemental to the first within the meaning of our statute, and is exempted from the tax.

Similarly in *Howard County, supra,* the document in question secured an indebtedness of $125,162,689.00 of which $81,662,689.00 represented unpaid obligations outstanding under prior deeds of trust. This Court held, based on *Hammond, supra,* that the recordation tax should only be upon new money secured—$43,500,000.00.

Moreover, although in *Hammond* the parties to the second deed of trust were the same as the parties to the first deed of trust, that factor is not, as Appellant suggests, controlling. There is nothing in the statute which requires the lender to be the same. In fact in most instances, the borrower must go to another lender in order even to secure a second loan.

Thus we hold that the recordation tax should have been computed on the $42,777.00 plus $400,000.00; and not on the $875,773.00.

### B. *Transfer Tax*

■ Section 10–187 *et seq.* of the Prince George's County code imposes the county transfer tax at a rate

> not to exceed one percent of the actual consideration paid ... under every instrument of writing conveying title to real property, or any interest therein, in the County, offered for record .... [H]owever, upon any refinancing of property, by the original mortgagor or mortgagors the tax shall apply only to the consideration over and above the amount of the original mortgage or deed of trust.

There is no dispute that the county transfer tax was owed on the $42,777.00. The parties also agree that the $400,-000.00 was exempted by the statute. At first blush, one might wonder why the $400,000.00 was subject to recordation tax but was not subject to local transfer taxes. The reason for this is that the standards for applying the taxes are different. The recordation tax is computed on a new instrument creating a new indebtedness, even if the instrument extinguishes a prior debt (in this case $400,000.00). The extinguished debt amount is still considered to be part of the principal amount incurred. The transfer tax statute, on the other hand, provides that upon refinancing, the tax is computed on the amount above the original mortgage. The $400,000.00 constitutes an original mortgage and the paying off of the $400,000.00 debt by a new mortgage qualified as a form of refinancing; thus it is not taxed.

Appellant contends that the $875,773.00 is not entitled to the exemption provided by the statute because the deed of trust was not paid off at the time of settlement.

We disagree with Appellant. The $875,773.00 also qualifies for an exemption under the statute. In this case the original deed of trust of $875,773.00 was refinanced by the wraparound deed of trust even though it was not thereby extinguished, as was the $400,000.00.

Accordingly we hold that the transfer tax as well was properly computed by the circuit court and the Maryland Tax Court on the amount of $42,777.00.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.

COSTS TO BE BORNE EQUALLY BY APPELLANT AND APPELLEES.